CARROLL, CHAS., Judge.
The appellant, who was the plaintiff below, sued Abraham Linch, doing business as Angler’s Hotel, for injuries she received *153 when she fell to the ground upon leaving the hotel by a rear entrance. Her amended complaint contained the following allegations :
"That heretofore, to-wit: on or about the 3rd day of November, 1958, the plaintiff was a guest of a tenant residing at the Angler’s Hotel, located at 634 Washington Avenue, Miami Beach, Dade County, Florida, owned and operated by Abraham Linch, defendant herein. That plaintiff was exiting from the rear door of said hotel on said date, and fell due to a dangerous and hazardous condition existing in that there was no step between the hotel premises and the ground level which defendant well knew existed.”
Plaintiff then alleged she was injured as a proximate result “of the aforesaid dangerous and hazardous condition, due to the negligence and carelessness of the defend-' ant.”
Defendant answered denying negligence and pleading contributory negligence. Thereafter, defendant moved for summary judgment. On the hearing on the motion there were before the court a discovery deposition of the plaintiff, and an affidavit, in opposition to the motion, made by Anna Hansen, the hotel guest at whose instance the plaintiff was in the hotel. Also, there were presented before that court, though not filed in evidence, photographs of the rear entrance showing the door sill to be approximately 15 inches from the ground.
The facts were few, and without material dispute, Mrs. Hansen had rented a room in the hotel on some basis which was not shown. She was in the process of moving in, and the plaintiff was assisting her. They had brought some of Mrs. Hansen’s things into the hotel, entering by the front door, and had left them in her room. Both ladies then proceeded to leave the hotel by a rear door, with the plaintiff walking ahead of Mrs. Hansen. Plaintiff explained that they left by the rear door because Mrs. Hansen’s room was located near it, and because they were not well dressed. She said they descended several steps to reach the door level on the inside, and that she fell when she stepped out of the rear door, expecting a step where there was none, between the door sill and the ground. It appeared that the sill of the rear door was high enough from the ground level to have required a step, but that there was no intervening step or platform step. It was 8 o’clock at night, and the substance of plaintiff’s statements in her deposition, concerning the lighting, was that there was a dim light at the rear door; that she was able to see where she was going, and that she was looking, but expected a step and none was there. Mrs. Hansen, in her affidavit, said they had no reason to anticipate that a step would be missing. There was no showing of any direction against use of the rear door of the hotel, or of any warning respecting the condition of that exit.
The trial court granted the defendant’s motion and entered a summary judgment, holding that the plaintiff was a licensee rather than an invitee. In so holding the learned trial judge was in error, because as a guest of a guest in the hotel the status of the plaintiff was that of an invitee, as recognized and held by the Supreme Court in Steinberg v. Irwin Operating Co., Fla.1956, 90 So.2d 460, 58 A.L.R.2d 1198, and when the facts and evidence, which were before the trial court on the motion for summary judgment, are considered in the light of the duty owed by the defendant hotel operator to an invitee,[1] it seems clear tha' *154 the question of negligence, as to whether the condition of the rear exit was unsafe or required a warning, and the question of whether the plaintiff was guilty of contributory negligence, were questions for jury trial.
In holding that the plaintiff was a licensee and not an invitee, the trial court cited and relied on Stewart v. Texas Co., Fla.1953, 67 So.2d 653; McNulty v. Hurley, Fla.1957, 97 So.2d 185 and Roth v. Flom, Fla.App.1958, 105 So.2d 179. In those cases plaintiffs were held to be licensees under other circumstances, and on premises other than a hotel. The McNulty case involved a person attending service at church. The Stewart case concerned a person going into a service station to obtain change for a ten dollar bill, and the Roth case was one in which this court held that a person visiting a tenant in an apartment house, who was injured when she fell on a sidewalk on the premises, was a licensee of the apartment house operator. Given its full effect, Roth v. Flom, supra, would appear to justify the reliance which the able trial judge placed upon it, but the Roth case is not controlling on the question of the plaintiff’s status in the defendant’s hotel for two reasons. First, because the Supreme Court has held that a guest of a guest in a hotel is an invitee. See Steinberg v. Irwin Operating Co., supra, Fla.1956, 90 So.2d 460. Second, Roth v. Flom, supra,[2] states a minority view,[3] and should be limited to its own facts which include that it dealt with an apartment house and not a hotel.[4]
In Steinberg v. Irwin Operating Co., supra [90 So.2d 462], the plaintiff went into a hotel in the company of two friends, one of whom desired to deliver a message to a registered guest of the hotel. Inquiry at the hotel desk revealed that the guest was not in. It was the holding of the Supreme Court in that case that when the plaintiff entered the hotel for such purpose her status was that of an invitee. It follows that if she had then proceeded to leave the hotel she would have remained an invitee while departing. Instead, she and the other two women wandered off to explore various lounges and other rooms adjacent to the *155 lobby for their own diversion. The plaintiff then fell, in going from the TV room at one level into the darker Movie room which was at a different level. The Supreme Court held that the plaintiff in that case had crossed the boundaries of the implied invitation, and that upon doing so she lost her status of invitee and became a licensee. In that connection the court said:
"Applying these rides to the case before us, it is perfectly clear that Mrs. Steinberg enjoyed the status of an implied invitee when she entered the hotel lobby. This status continued so long as she used the facilities of the hotel reasonably included within the invitation. When, for her own pleasure and convenience, she crossed the bounds of the invitation and on her own initiative sought entertainment in the 'TV Room’, and later in the ‘Movie Room’, she became at most a licensee. * * *” [Emphasis added.]
In the Steinberg case the Supreme Court said: “On the general relationship between a hotel operator and visitors of a guest, see Williams v. Mayer, La.App., 4 So.2d 71.” In the cited Louisiana case, the court (4 So. 2d at page 72) had said:
“It is our opinion that by the very nature of conducting a hotel, the keeper or operator invites the public to visit the premises and the hotel guests. Plaintiff had an implied if not a tacit invitation and permission to visit the guests of the hotel. We are further of the opinion that the owner and operator of a hotel is under duty to furnish safe premises which may be used by persons legally therein in the ordinary and reasonable way without injury. We are further of the opinion that the owner and operator of a hotel should provide reasonably safe ways of ingress and egress for those legally therein and should exercise care to keep a stairway and vestibule well lighted and free from obstructions. * * * ”
Therefore, as held in the Steinberg case, the plaintiff in the instant case, who was a guest of a guest in the hotel, was an implied invitee of the owner or operator of the hotel. Also, it would seem that because the plaintiff was assisting the hotel guest to move her possessions into the hotel she should be considered a business invitee of the hotel, to the same extent as would a delivery man or mover engaged to render such assistance.
Appellee pointed out that the complaint referred to the hotel guest as a “tenant,” and argued that while a person paying by the day is a guest in a hotel, one paying by the week or longer period is a tenant. It was then contended that while one visiting a hotel “guest” may be an invitee, a person visiting a hotel “tenant” is only a licensee. We can not agree. The invitee status of a guest in a hotel, or of a guest of such guest, is not dependent on whether the rent is fixed by the day, by the month, or by the year. It is not material, in determining the status of a guest of a hotel guest, whether the latter is referred to as a “guest,” or as a “tenant,” of the hotel.
It was argued on behalf of the ap-pellee that the plaintiff lost her status as an invitee by seeking to leave the hotel by the rear door, instead of leaving by the front door. Ordinarily an invitee in a hotel is privileged to use the front door, or a rear door or other door which is available for entrance or exit, in the absence of restrictions or warnings to the contrary. 29 Am. Jur., Innkeepers, § 69; Clewell v. Plummer, 384 Pa. 515, 121 A.2d 459. See also Morris v. Granato, 133 Conn. 295, 50 A.2d 416; Bunnell v. Waterbury Hospital, 103 Conn. 520, 131 A. 501. The plaintiff in the instant case was not exploring the hotel — she was departing, using a ready and convenient means. She encountered no warning or prohibition against the use of the exit she chose. If a guest of the hotel would not lose the status of an invitee by using the rear door, then this guest of a guest, while departing by the rear door, would be and remain an invitee.
*156 For the reasons stated the summary judgment appealed from is reversed and the cause is remanded for further proceedings not inconsistent herewith.
Reversed.
HORTON, C. J., and PEARSON, J., concur.

. “A greater duty is owed to an invitee than to either of the other class of persons above mentioned [trespassers and licensees]. The owner or occupant owes an invitee the duty of keeping the premises in a reasonably safe condition, and, as plaintiff contends, also to guard against subjecting such person to dangers of which the owner or occupant is cognizant or might reasonably have foreseen. First Federal Sav. & Loan Ass’n v. Wylie, Fla.1950, 46 So. *154 2d 396 and Messner v. Webb’s City, Inc., Fla.1952, 62 So.2d 66.” McNulty v. Hurley, Fla.1957, 97 So.2d 185, 187.
“It is the duty of an innkeeper to use ordinary care to keep the premises in a reasonably safe condition so that his guests may use them in the ordinary and reasonable way without danger. His liability in such case rests upon the same principles applicable in other cases where persons come upon the premises at the invitation of the owner or occupant and are injured in consequence of the dangerous condition of the premises. * * ” Miller v. Shull, Fla.1950, 48 So.2d 521, 522.
“The law imposes on hotels, apartments, innkeepers, etc., the duty to keep their buildings, premises and appliances in a condition reasonably safe for the use of their guests, or at least those parts of the buildings and premises to which the guests are invited or may reasonably be expected to use. * * * ” Goldin v. Lipkind, Fla.1950, 49 So.2d 539, 541, 27 A.L.R.2d 816.

. As applicable to a guest of a tenant in an apartment house, Roth v. Flom, supra, was followed by the District Court of Appeal in the second district in Tomei v. Center, Fla.App.1959, 116 So.2d 251, 253.

. Compare, on the duty of an apartment house operator, as to the common entrances and walkways, to the tenants and guests of the tenants, 2 Restatement, Torts, § 360; 52 C.J.S. Landlord and Tenant § 418(a) ; Prosser on Torts, § 80, p. 473 (2d Ed.1955) ; Prosser, Business Visitors and Invitees, 26 Minn.L.Rev. 573, 601 at N. 160 (1942). See cases cited in the foregoing and in Annotation 97 A.L.R. 220, 224, 234 (1935). See also Taneian v. Meghrigian, 15 N.J. 267, 104 A.2d 689.

. The earlier cases of Norman v. Shulman, 150 Fla. 142, 7 So.2d 98, and Westerbeke v. Reynolds, 155 Fla. 2, 19 So.2d 413, which involved claims of guests of apartment house tenants for alleged failure «to properly maintain common exits, were determined on the basis of the duty owed by landlords to tenants, and the question of whether a guest held a status different from that of a tenant was not raised or dealt with.