MRS. MARGARET KANDRACH, Plaintiff-Appellant, v. SIDNEY G. CHRISMAN and LUCILLE CHRISMAN, d/b/a Chrisman Motel, Defendants-Appellees. —473 S.W.2d 193.

Middle Section. June 25, 1971.

Certiorari Denied by Supreme Court November 1, 1971.

Michael Murphy, Murfreesboro, for plaintiff-appellant.

Watkins, McGugin, Finch & McNeilly, Nashville, for defendants-appellees.

TODD, J. The plaintiff, Mrs. Margaret Kandrach, sued the defendants, Sidney G. Chrisman and Lucille Chrisman, d/b/a Chrisman Motel, for wrongful death of John R. Kandrach, son of plaintiff, who drowned in de-

fendants' swimming pool on August 6, 1968. The Trial Judge directed a verdict for defendants, and plaintiff appealed.

The three assignments of error complain that the directed verdict was error because there was evidence to support a finding:

(a) that the deceased was an invitee on the premises of defendants;

(b) that the defendants maintained a "trap" on their premises; and

(c) that the defendants were guilty of a breach of duty to even a licensee or trespasser.

Most of the material facts are undisputed. The deceased, aged 21, unmarried, was an airman in the United States Air Force stationed at Sewart Air Force Base near Murfreesboro, Tennessee. On August 5, 1968, Miss Donna Zbozien, fiancee of deceased, in company with her parents, registered as guests of the defendants' motel. On the following day, deceased accompanied Miss Zbozien to defendants' motel. Shortly thereafter, deceased and Miss Zbozien dressed for swimming, proceeded to and entered the swimming pool on the motel premises. Neither deceased nor Miss Zbozien were able to swim. No one else was in or about the pool at the time. As deceased walked or stood in the water, he started struggling, sank beneath the surface and drowned.

The first assignment of error presents the issue of the status of deceased upon the premises of the defendants. It is conceded that deceased was not a registered guest or

patron of the motel. It is likewise conceded that deceased was a social guest of registered patrons of the motel.

Persons upon the premises of the inn in response to an invitation, either express or implied, for the purpose of visiting or calling upon registered guests at proper times, for lawful purposes, and who remain within the boundaries of their invitation are to be treated as invitees, to whom the innkeeper owes the duty of exercising ordinary or reasonable care for their safety while upon the premises of the inn. 40 Am.Jur.2d Hotels, Motels, Etc., sec. 84, p. 958. 58 A.L.R.2d 1203, sec. 2, and authorities cited therein.

While an innkeeper is not the insurer of those visiting his guests, he owes at all times to persons properly invited to the hotel, by guests or otherwise, the duty of maintaining his premises in a reasonably safe condition, and of exercising ordinary or reasonable care to protect such persons while in the hotel and in the part thereof open to the public from personal injury through his (the innkeeper's) negligence. It has been held that the innkeeper owes to a guest of his guest the same degree of care as he owes to the guest himself. 43 C.J.S. Innkeepers sec. 22, p. 1182, and authorities cited therein.

Defendants insist that, even though the deceased did enjoy the status of invitee within the public areas of the motel, within the room rented to the registered guests, and upon the passageways to and from the room, nevertheless, (defendants insist) when deceased entered the swimming pool he ceased to be an invitee and became a mere licensee or trespasser.

 A visitor or caller of a guest may become a mere licensee or trespasser if he crosses the boundaries of his invitation. 40 Am.Jur.2d, Hotels and Motels, sec. 84, p. 958; 58 A.L.R.2d 1204, sec. 3(a) and authorities cited therein.

In support of their insistence that deceased was not an invitee in the swimming pool, defendants urge that there is no evidence that deceased entered the swimming pool for any purpose except his own pleasure and satisfaction.

 The testimony of Miss Zbozien is as follows:

"We sat in the motel room for a while. And I had some post cards I was going to write out, and John suggested we go out to the pool for a while first. So I set the post cards aside, and got my swimming suit on. John had his swimming trunks on under his shorts already. And so we went to the pool."

Since deceased was accompanied by his fiancee, a registered guest of the hotel, it is reasonably inferable that his entrance into the pool was at the invitation of a registered guest who expected to derive some pleasure and satisfaction from his presence. To say the least, Miss Zbozien would have some natural interest in entertaining her guest and fiance, so that the pleasure and satisfaction of deceased was in pursuance of the interests and desires of the registered guest, Miss Zbozien. Thus it cannot be said that the uncontroverted evidence and all reasonable inferences therefrom are to the effect that the presence of deceased in the pool was solely for his own pleasure and satisfaction.

Defendants next insist that deceased entered the pool in violation of the express rules and regulations of the defendants. The only evidence cited in support of this proposition is as follows:

The defendant, Mrs. Chrisman, testified as follows:

"Q For what purpose was this pool constructed at the motel for the use of the pool?

A For the use of our guests that come and stay there overnight.

Q Was the pool ever open to the public?

A No.

\* \* \* \* \* \*

Q And in fact that was the reason for your having the pool wasn't it, to attract people and for the use of people who were lawfully at the motel?

A Yes, sir.

\* \* \* \* \* \*

Q Have you ever turned away guests who wanted others to use your swimming pool?

A Yes, sir.

Q Under what circumstances?

A Well, people come there and they go to bring visitors with them and want to know if it is all right to go in the swimming pool, and I tell them no.

Q Do they go to other motels?

A I have had people to leave if their company couldn't go in. They didn't want to stay.''

■ Neither the purpose entertained in the mind of the owners at the time of construction nor the dealings with other guests on other occasions constitutes a ''rule'' or ''regulation'' binding upon a person unaware of such purpose or dealings.

The only other evidence of a limitation upon the rights of deceased upon defendants' premises consists of the physical arrangement and surroundings of the pool.

In this regard, the defendant, Mrs. Chrisman, testified as follows:

''Q Now, you have testified about a fence. Is that the little green thing about, oh, so high?

A About 18″ or 2′ high. I'd say 18″ high.

Q Stretched around the pool.

A That is to keep grass from blowing in the water when we cut the grass around there.

Q That is what its purpose is?

A Yes, sir.

Q Not necessarily to keep people out?

A No, sir.

Q Because people could step over that easily.

A Yes, sir.

Q But there is nothing else around this pool to indicate to anybody that they maybe ought to stay out. There is no hedge planted around it?

A No, sir."

It is uncontroverted that a sign was erected near the pool which bore the following wording:

"Motel guests only

No life guard

Children must be accompanied by parents

No alcoholic beverages or food allowed at pool

No glass containers allowed around pool

Motel not responsible for lost articles

Motel not responsible in case of accident

Do not enter pool while using oil or suntan lotion."

The sign was not at the entrance to the swimming pool area. To the contrary, it was placed at the end of the pool farthest from the guest area. However, the deceased and Miss Zbozien actually entered the pool by way of a ladder immediately adjacent to the sign.

■ Even though it might be insisted that the uncontroverted evidence shows that deceased was on notice of the contents of the sign, nevertheless the sign itself is not unequivocal in its meaning. The words "Hotel Guests Only" are ambiguous under the circumstances. Certainly, this notice was intended to exclude outsiders who had no

invitation from anyone at the motel. However, there is nothing to indicate the intended meaning of the word "guest." The words "registered guests" are clearly limited to those persons who have been recorded as rent-paying occupants of rooms. The words "Hotel Guests" may mean "registered guest," or they may include others, such as persons invited upon the premises by the management or by registered guests. The sign does not conclusively exclude a "guest of a registered guest" of the motel, which was the status of deceased.

Caruso v. Aetna Insurance Co., La.App., 186 S.W.2d 851 (1966) involved the "invitee" status of the user of a motel swimming pool; however in that case, there was a specific agreement with the motel to hold a "swimming party" with invited guests. No other reported case has been found involving the status of a person entering a hotel swimming pool by invitation of a registered guest.

In 58 A.L.R.2d, beginning at page 1204, sec. 3(a) is found an analysis of a number of cases dealing with the change of status of a "guest of a guest" by departure from the scope of invitation. The annotation states:

"The implied invitation extended by the hotel to third persons to visit or call upon registered guests is restricted in scope and appears that although a person entering an inn to visit or call upon a registered guest may, upon entry, have the status of an invitee, he may take himself without the boundaries thereof, and become a mere licensee or trespasser as to some portions of the inn."

None of the cases cited deals with a situation similar to the present case, wherein the "guest of a guest" was in

the presence of and actually being entertained by his hostess, a registered guest.

██ In the absence of reported authority, the rule of reason and common sense is that a bona fide guest of a patron of a motel or hotel is in fact an invitee of the motel or hotel so long as he is within the bounds of the invitation extended by the patron and within the area into which the patron has apparent authority to invite him. The area within which a patron would have apparent authority to entertain a guest would ordinarily be the same area in which the patron himself is allowed, unless clear and unequivocal notice is given that a particular area is open to patrons but closed to guests of patrons.

The above quoted sign was not such an unequivocal and clear notice of exclusion that, as a matter of law, the deceased ceased to be an invitee upon entering the swimming pool.

In Parsons v. Drake, 347 Pa. 247, 32 A.2d 27 (1943) the plaintiffs went to a hotel to visit a registered guest who was absent from her room. Plaintiffs waited on an outside balcony which fell and injured them. The court held that the question of whether plaintiffs had departed from the scope of their invitation and thereby forfeited their status as invitees was a question of fact for the jury.

In Bass & Co. v. Parker, 208 Tenn. 38, 343 S.W.2d 879 (1960), the Supreme Court affirmed a jury verdict for the plaintiff who undertook to ride a "man lift" in a parking garage in spite of signs, "For employees only" and "No Trespassing," and in spite of the obvious danger involved in riding the particular equipment.

In Dempster Brothers, Inc. v. Duncan, 61 Tenn.App. 88, 452 S.W.2d 902 (1969) and Roberts v. Tennessee Wesleyan College, 60 Tenn.App. 624, 450 S.W.2d 21 (1969), this Court sustained verdicts for injured parties and in each case held that the status of the injured party was a question of fact for the jury.

In American National Bank v. Wolfe, 22 Tenn.App. 642, 125 S.W.2d 193 (1938), the injured party went to the public banking rooms of the defendant bank and there obtained change for a $5.00 bill from a teller. Thereafter, plaintiff started searching for a restroom, and, in her search, began to descend the stairs to the Safety Deposit Department where she had no business with the bank and where there was no restroom for her use. The plaintiff was injured on the stairs, and this Court affirmed a verdict in her favor, stating:

"(b) After carefully reading the evidence we are of the opinion that the plaintiff, when she began to descend this stairway, had reasonable ground, from the account of the arrangement of the building, for believing that she was invited or expected to go down the stairway.

" If not a question for the court, it was certainly a question 'for the jury to visualize the situation from the evidence, and decide whether the plaintiff had reasonable ground from what she saw for believing that she was invited or expected to go where she did go.' MacDonough v. F. W. Woolworth Co., 91 N.J.L. 677, 103 A. 74." 22 Tenn.App. p. 647. 125 S.W.2d p. 196.

 Under the evidence in this record and the applicable law, the issue of whether deceased was an in-

vitee should have been submitted to the jury. In view of this holding, it becomes unnecessary to discuss or pass upon the insistence of plaintiff that there was evidence of gross negligence, recklessness, a trap, or breach of duty to a licensee or trespasser. It is sufficient to observe that there is evidence that the warnings of depth and other safety devices were inadequate, that the design of the pool was below certain safety standards, that the condition of the bottom of the pool and the water did not comply with certain standards, that no life-saving apparatus was present and no one trained in resuscitation was available, all of which are proper matters for consideration by the jury in the determination of whether the defendants exercised due care under the circumstances.

In the case of Meador v. Hotel Grover, 193 Miss. 392, 9 So.2d 782 (1942) it was held that an innkeeper is under a duty to take reasonable steps for the prompt and proper care and treatment of one injured on the premises.

There is evidence of contributory negligence on the part of the deceased: that, without ability to swim, he walked into a pool with an inclined, slippery, bottom and proceeded to a point where most of his body was under water. It might be plausibly insisted that this was contributory negligence as a matter of law, however the reasonableness of conduct is principally and predominantly for the jury.

Questions of contributory negligence, as well as actionable negligence, are ordinarily issues for the jury. Kemp v. Town of Lebanon, 215 Tenn. 118, 384 S.W.2d 14 (1964).

 Generally, negligence, contributory negligence and proximate cause are issues to be decided by the jury and can be withdrawn and decided by the trial judge only in those cases in which the facts are established by evidence free from conflict from which inferences are so certain that all reasonable men, in the exercise of free and impartial judgment must agree upon them. Spain v. Livingston, 59 Tenn.App. 346, 440 S.W.2d 805 (1968).

Accordingly, the directed verdict and judgment for defendants is reversed. The cause is remanded for a new trial. The costs of this appeal are adjudged against the defendants-appellees.

Reversed and remanded.

Shriver, P.J.(M.S.), and Puryear, J., concur.