Susan ZERANGUE, Plaintiff-Appellee,

v.

DELTA TOWERS, LTD., Southern Host Hotels, Inc., and ABC Insurance Company, Defendants-Appellants.

No. 86–3357.

United States Court of Appeals, Fifth Circuit.

June 25, 1987.

---

1. *Allseas Maritime, S.A. v. M/V MIMOSA,* 812 F.2d 243 (5th Cir.1987).

2. *Id.* at 247.

3. *Id.* at 248.

4. *Id.*

Robert E. Kerrigan, Jr., Deutsch, Kerrigan & Stiles, David P. Gontar, New Orleans, La., for defendants-appellants.

Jack P. Jeffries, John G. Fellinger, Lord, Day & Lord, New York City, amicus curiae, for American Hotel & Motel.

Gerald E. Meunier, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Susan Zerangue has recovered $228,000 against the owner and the operator of the Ramada Hotel in New Orleans for damages suffered in a protracted rape ordeal. Defendants' liability is based upon evidence, and a jury verdict, of negligent security arrangements and of an unreasonably dangerous hotel lobby exit which gave Zerangue no warning that when she went out onto Claiborne Street at 3:00 a.m. she would then find the hotel doors locked against reentry. The appeal is directed at the sufficiency of the evidence. We fault the judgment only with respect to the amount of damages. We remand for a new trial unless the plaintiff accepts a remittitur.

## I. Plaintiff's Proof

Susan Zerangue drove from Beaumont to New Orleans with family and friends on the Friday prior to Mardi Gras in 1984. They registered at the Hilton Hotel and then went their separate ways. Because her brother did not return to the Hilton until 2:00 a.m., Susan was unable to reach him during the evening hours; and because

she carried no identification, she was denied access to the Hilton room. She went to the Ramada Hotel at Canal and Claiborne Streets with an acquaintance who was a guest there. At 3:00 a.m. she awoke and, anxious about having not given word of her whereabouts to her companions, she hastened to depart the Ramada. When she reached the lobby fronting on Claiborne Street, she unsuccessfully looked for someone to help her and then went to seek a taxi outside the hotel. Most of the doors, all glass, were locked, but a push-bar door opened. Out on the street she saw only a man coming in her direction, but no taxi. She attempted to reenter the hotel but discovered that the door was locked from the outside. She was forced to remain alone on Claiborne Street at 3:00 a.m. with only one strange man who walked up to her.

The stranger offered to help and gave her directions to locate a taxi. After several steps she realized that the street intersection to which she was headed was not promising for her purposes. She turned to go back; but the man grabbed her, brandished a knife and threatened to slit her throat if she cried out. He dragged her across the street to the yard of an old frame building. At knifepoint and by his commands, she disrobed and submitted to his abuse: oral sex, vaginal sex, anal sex, and oral sex again. Finally he bound and gagged her, stole her money and jewelry and eventually left. After help was summoned, she was interviewed by the police about 5:15 a.m. and then taken to the hospital.

## II. Proceedings Below

This suit was brought by Susan Zerangue under diversity jurisdiction against the owner of the hotel building, Delta Towers, Ltd., the operator of the hotel, Southern Host Hotels, Inc., and the insurer of both, Utica Mutual Insurance Co. A four day jury trial was held in March of 1986 and the verdict was generally favorable to plaintiff. All parties were found to be negligent, defendants' negligence set at 70% and the plaintiff's at 30%. The hotel doors were found to be defective. The jury allocated causation attributable to the defendants at 80% due to negligence and 20% due to the defective doors. The plaintiff's damages were found to be $300,000. Applying the factors to reduce the recovery, the trial court rendered judgment in favor of the plaintiff for $228,000. No one appeals that computation. Southern Host and its insurer appeal the final May 18, 1987 judgment against them, arguing principally that the verdict is not warranted under the evidence.

## III. Appellants' Arguments

### A. Sufficiency of the Evidence of Negligence

■ As a visitor of a guest of the hotel, the plaintiff was an invitee owed the duty of ordinary and reasonable care. The hotel had a duty to maintain the premises in a reasonably safe condition and to warn her of any hidden or concealed peril which was known or reasonably discoverable. *Brown v. Southern Ventures Corp.*, 331 So.2d 207 (La.Ct.App. 3d Cir.1976).

■ As we see too often, appellants have argued their version of the evidence to overcome district court findings to the contrary. Ignoring the scope of appellate review, appellants credit evidence favorable to them and discount plaintiff's evidence. It does not succeed.

There were two lobbies in this hotel, both large and well lighted, each facing an expanse of glass doors and a canopied entrance at the street. The registration desk was off the Canal Street lobby, and from almost any point in the Claiborne lobby the desk was hidden. All doors of the Claiborne lobby were locked except the push-bar doors, which could be opened from the inside but not from the outside. Once outside, a guest would have to walk the better part of a block to reenter the hotel through the Canal Street lobby doors. Streets in this vicinity were dangerous places for a young lady to be at 3:00 o'clock in the morning. The supervisor of the security guards on duty at the time of this incident testified that either he or his temporary replacement was supposed to have been present in the lobby at all times, and that if

he had been there to see the plaintiff go out of the door, he would have stopped her "because that would be a dangerous thing to do." Plaintiff's expert on hotel security and crime prevention testified that the police department statistics showed an increase in criminal offenses in this vicinity the year prior to the incident and that under the circumstances the Ramada security program was inadequate. He concluded that at least one Claiborne Street door should have afforded both ingress and egress, with a guard permanently stationed at that door. No guard was actually present even though under the hotel's plan one was supposed to be there. Most importantly, there was no warning to Susan Zerangue against exiting to Claiborne Street and that once outside, she would be unable to return.

The defendants argue that it was the rapist that hurt the plaintiff and did so away from hotel premises. The answer is that, but for her having been locked out at the mercy of the rapist, no harm would have occurred. This was a danger that the security guard on duty foresaw; the jury was justified in finding that the hotel operator should have foreseen the risk to its invitees. *See Dixie Drive It Yourself System v. American Beverage Co.*, 242 La. 471, 137 So.2d 298 (1962).

## B. Plaintiff's Assumption of the Risk

■ Defendants contend that it was error for the district court to deny them a submission of the assumption of risk defense, and the argument is that plaintiff exposed herself voluntarily and knowingly to this criminal attack and thereby assumed the legal risk of her harm. We reject the argument. This plaintiff knew nothing about Claiborne Street or the location of taxi stands and, most important, she had no idea that she would be locked outside of the hotel. The district court correctly ruled that there was no evidence that she understood and appreciated the risk and accepted it and the attendant danger. *See Dofflemyer v. Gilley*, 384 So.2d 435 (La.1980).

## C. Premises Defect and Strict Liability

■ Arguing that the doors worked exactly the way they were supposed to work, defendants say that there is no basis for strict liability here. Under La.Civ.Code Ann. art. 2317 (West 1979), a defendant is strictly liable for damage caused by "the things which we have in our custody." Under the Louisiana law this liability arises from a defect creating an unreasonable risk of harm which causes injury to the plaintiff. The Louisiana case which seems to be most on point is *Morgan v. Hartford Accident & Indemnity Co.*, 402 So.2d 640 (La.1981). In that case the plaintiff's decedent fell because she did not see the eight inch drop between the hallway and the gown room in a building under the care and custody of the defendant church. The court held that "this unexpected drop between two rooms in the building without attendant warning presented an unreasonable risk of injury. Therefore, defendant is liable, under La.Civ.Code art. 2317, for the injuries sustained by Mrs. Morgan and her survivors." *Id.* at 642. The defect in *Morgan* was simply that the design of the interior of the building presented an unreasonable risk of injury. *See also Catalano v. Walgreen's Corp.*, 470 So.2d 904 (La.Ct. App. 4th Cir.1985) (art. 2317 liability due to metal door closing device allowing only 6' 2⅝" clearance). The jury here was entitled to find that this unguarded and warningless exit, denying the option of reentry, created an unreasonable risk of harm to the plaintiff.

## D. Quantum of Damages

■ Susan Zerangue, a young woman who had lived in a well protected society, was forcibly dragged to an abandoned house, held in fear of her life for over an hour during which time she was sexually assaulted in four episodes. She was left naked, bound and gagged. Two years later, at the time of the trial, she continued to complain of nightmares, fear of strangers and difficulty in being alone.

The degrading abuse she endured that night in New Orleans, together with the

bad memories and occasional upsetting effects, constitute the injury for which she is entitled to be compensated. An even view of her injury includes the alleviation that she was not beaten and required only minimal medical attention. She travelled from New Orleans the same day and returned promptly and almost entirely to her normal life. The experience has not barred her from intimate relations with the opposite sex. We conclude that the jury damage award evidences an emotional reaction to the nature of her experience rather than a reasoned view of what the evidence justifies to be the dollar damages which the defendants should be required to pay. *See Sam's Style Shop v. Cosmos Broadcasting Corp.*, 694 F.2d 998, 1006 (5th Cir.1982). We believe the evidence supports a total damages figure of no more than $200,000. Reduced by the plaintiff's own fault contributing to the injury, her recovery would be $152,000.

The judgment is vacated. The case is remanded to the district court with instructions to grant a new trial if the plaintiff will not accept a remittitur to the amount of $152,000. Interest, of course, is to be added as in the prior judgment.

VACATED AND REMANDED.