830 P.2d 477

**Arley WOODTY, Plaintiff–Appellant,**

v.

**WESTON'S LAMPLIGHTER MOTELS d/b/a Page Boy Motel, Defendant–Appellee.**

**No. 1 CA–CV 90–215.**

Court of Appeals of Arizona, Division One, Department C.

May 7, 1992.

Law Offices of Frederick C. Creasy, Jr. by Frederick C. Creasy, Jr. and David W. Hume, Scottsdale, for plaintiff-appellant.

Thomas, Burke and Phillips, P.C. by Craig W. Phillips, Craig McCarthy, Benjamin C. Thomas and Marc A. Appel, Phoenix, for defendant-appellee.

## OPINION

GRANT, Presiding Judge.

This appeal presents a question of first impression in Arizona: What is a motel owner's duty, if any, to a visitor of a registered guest of the motel? In answering this question we must analyze the legal status of such a visitor and any resulting duty owed to plaintiff's decedent, who was a visitor to the room of a registered guest at defendant-appellee's Weston's Lamplighter Motels dba Page Boy Motel ("the motel").

## I. FACTS AND PROCEEDINGS BELOW

During the early morning hours of March 1, 1987, Hazel Woodty, the wife of plaintiff-appellant Arley Woodty ("Woodty"), went to the Page Boy Motel in Page, Arizona, apparently to attend a party in room 2, which was occupied by a registered guest of the motel. At least three other unregistered visitors were also in the room, and reportedly the occupants of the room stayed up all night drinking.

Sometime between 6 a.m. and 8 a.m. that morning, the registered guest left the room, but the four unregistered visitors remained there. At about 8 a.m., one of the unregistered visitors adjusted the in-wall, heating/air-conditioning unit in the room, and flames shot out of the front of the unit. Apparently, one or more of the occupants of the room attempted to extinguish the flames with a towel or blanket. Two of the unregistered visitors then left the motel.

A third unregistered visitor was unable to awaken Mrs. Woodty, who, at the time the fire started, was lying on the bed either asleep or passed-out from intoxication [1],

---

1. Decedent's blood alcohol reading was deter-   mined to be .38% at the time of her death.

and he left the room. The fire subsequently spread throughout the room. After police and fire department personnel were summoned and the fire extinguished, Mrs. Woodty's body was found in the bathroom of room 2. The cause of her death was determined to be smoke inhalation from the fire that originated in the heating/air-conditioning unit in the motel room.

On February 28, 1989, Woodty filed a wrongful death action against Weston's Lamplighter Motels. He alleged that the motel failed to properly install, maintain and inspect the heating/air-conditioning unit in room 2, to warn of its dangers, and to use reasonable care to prevent injury to persons such as Mrs. Woodty. Woodty sought damages for loss of the society, comfort, companionship, services, consortium, income and support of Mrs. Woodty and for expenses incurred for her burial.

Woodty subsequently filed a motion for partial summary judgment on the issue of the motel's liability. He argued that the trial court should find the motel liable as a matter of law based on the doctrines of *res ipsa loquitur* and strict liability. In response, the motel argued that the doctrine of *res ipsa loquitur* did not apply to the facts of the case but that, even if it did, the theory should be presented to the jury, not decided on summary judgment. The motel also argued that it was not strictly liable to Woodty because his complaint alleged only negligence, not strict liability, and furthermore the rule in Arizona is that a motel owner cannot be found strictly liable for harm resulting from a defective product contained in the motel. *See Wagner v. Coronet Hotel*, 10 Ariz.App. 296, 458 P.2d 390 (1969).

The motel also filed a motion for summary judgment, arguing that, because Mrs. Woodty was not a registered or paying guest at the motel, but only a social guest of a registered guest, she was at most a licensee to whom the motel owed only a duty to warn of known dangers and to refrain from wantonly or willfully causing harm. Furthermore, the motel argued, the undisputed facts showed that the motel did not know, and had no reason to know, of the peril presented by the heating/air-conditioning unit and that it had not wantonly or willfully harmed Mrs. Woodty. The motel also contended that Mrs. Woodty's intoxication was a superseding intervening cause of her death.

In denying Woodty's motion, the trial court ruled that (1) the doctrine of *res ipsa loquitur* did not create a presumption of liability, but, if applicable, the doctrine would create a jury question, and (2) a motel is not strictly liable to its guests, citing *Wagner*. After hearing further argument on the status of Mrs. Woodty as an invitee, licensee or trespasser, the trial court noted that, even under the majority rule, a visitor of a registered guest is owed the same duty as the guest, and a motel owner's duty to a visitor of a registered guest arises only if the visitor is on the motel premises for a lawful purpose, at a proper time, by the guest's express or implied invitation and acting within the boundaries of the invitation. The trial court found that the presence of Mrs. Woodty in the motel room overnight, and even after the registered guest had left, did not meet this criteria. The court also observed that Mrs. Woodty's presence was adverse to the motel owner's legitimate business interest in permitting use of the rooms on such terms as the motel prescribed. The court granted summary judgment to the motel and dismissed the complaint. Woodty timely appealed the final judgment.

## II. DISCUSSION

### A. DUTY OF THE MOTEL TO A VISITOR OF A REGISTERED GUEST

The first of two issues raised by Woodty on appeal is whether the trial court erred in ruling that, as a matter of law, the motel did not owe a duty of care to Mrs. Woodty. Although the trial court's minute entry indicated that the status of Woodty's decedent as invitee, licensee or trespasser was the issue before it, the ultimate decision of the court, as reflected in the minute entry, seems to have been that because Mrs. Woodty remained in room 2 of the motel overnight and even after the registered guest

had left, the motel owed no duty to Mrs. Woodty.[2]

In Arizona, the particular duty of care owed by a landowner to an entrant on his or her land is determined by the entrant's status as an invitee, licensee or trespasser. *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982); *McDonald v. Smitty's Super Valu, Inc.*, 157 Ariz. 316, 318, 757 P.2d 120, 122 (App.1988). Although Woodty urges this court to abolish the common law distinctions of invitee, licensee and trespasser that are used in determining landowner liability, we decline to do so. Our supreme court has left the use of these status distinctions undisturbed since its decision in *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 428 P.2d 990 (1967). *See Shaw v. Petersen*, 169 Ariz. 559, 563, 821 P.2d 220, 224 (1991) (Fidel, J., specially concurring); *Moore v. Tucson Elec. Power Co.*, 158 Ariz. 187, 189, 761 P.2d 1091, 1093 (App.1988); *Robles v. Severyn*, 19 Ariz.App. 61, 62–63, 504 P.2d 1284, 1285–86 (1973). Although the situation in this appeal demonstrates the tortured analysis sometimes necessary to fit a person into the confines of one of the common law status distinctions, we are bound to apply the rule set forth and followed by the Arizona Supreme Court.

The status of a paying guest of a hotel, motel, inn or other place of temporary lodging[3] is that of an invitee. *Wagner v. Coronet Hotel*, 10 Ariz.App. 296, 301, 458 P.2d 390, 395 (1969). The duty of a business owner to its invitees is to maintain its premises in a reasonably safe condition. That duty is met in part by reasonably inspecting the premises to discover dangerous conditions. *McDonald*, 157 Ariz. at 318, 757 P.2d at 122. The owner, however, is not an insurer of the safety of its invitees. *Wagner*, 10 Ariz.App. at 301, 458 P.2d at 395. To establish the owner's liability for injuries resulting from a dangerous condition on the premises, an invitee must prove either that the dangerous condition was caused or permitted to develop by persons over whom the owner had control or that the owner had actual or constructive knowledge of the existence of the condition. *McDonald*, 157 Ariz. at 318, 757 P.2d at 122. Constructive knowledge is established if the invitee shows that the condition existed long enough that the owner, in the exercise of ordinary care, should have discovered and corrected it. *Id.*

The motel argues that Mrs. Woodty was at most a licensee in relationship to the motel because she was merely a social guest of the registered guest. The motel points out that the court in *Shannon* held that a social visitor is a licensee in relation to a landowner and that a landowner's duty to a licensee is to prevent him or her from running upon a known hidden peril and to refrain from wantonly or willfully causing harm to the licensee. The motel contends that since Mrs. Woodty was a licensee, and since the motel did not know of the peril presented by the cooling/heating unit in room 2, and did not wantonly or willfully

---

**2.** The trial court's minute entry provides in relevant part:

The issue of the status of Plaintiff's decedent as invitee, licensee, or trespasser is not clearly resolved by reference to Arizona law.... The Court of Appeals of North Carolina has held that the "majority" rule is that a visitor of a registered guest at an inn is owed the same duty as is the guest, subject to certain stipulations; *Hockaday v. Morse* [57 N.C.App. 109], 290 S.E.2d 763 (1982). However, even if the *Hockaday* rule were adopted, the duty to the visitor only arises where the visitor is there "for a lawful purpose, at a proper time, by the guest's express or implied invitation," and when the visitor "remains within the boundaries of the invitation," 290 S.E.2d at 765. The presence, in the motel room, of Plaintiff's decedent overnight and even after the registered guest had left, in the morning does not meet the *Hockaday* criteria. Among other considerations, this visitor's presence was adverse to the innkeeper's legitimate business interest that is, his right to permit use of the rooms on such terms as he prescribes; see *State v. Steele* [106 N.C. 766], 11 S.E. 478.

**3.** The terms "motel," "hotel," "inn" and "place of lodging" are used interchangeably in this opinion to indicate a commercial place of temporary lodging. This opinion applies equally to all such places of lodging. However, we need not reach the issue of its application to premises rented or leased for long-term housing, such as apartments and condominiums or townhouses used as rentals.

harm Mrs. Woodty, the trial court correctly entered judgment in favor of the motel.

Woodty maintains that Mrs. Woodty was an invitee in relation to the motel. He points out that the rule in the majority of other jurisdictions is that a social visitor of a registered guest is an invitee and is therefore entitled to the same standard of care owed by an innkeeper to a registered guest.

■ The general rule is that an innkeeper owes the same duty to a visitor of a registered guest as he owes to an invitee. A person upon the premises of the inn in response to an invitation, either express or implied, for the purpose of visiting or calling upon a registered guest at a proper time, for a lawful purpose, and who remains within the boundaries of the invitation, is to be treated as an invitee, to whom the innkeeper owes the duty of exercising ordinary or reasonable care for his or her safety while on the premises of the inn. *Hockaday v. Morse,* 57 N.C.App. 109, 290 S.E.2d 763 (1982); *Kandrach v. Chrisman,* 63 Tenn.App. 393, 473 S.W.2d 193, 195 (1971); *Steinberg v. Irwin Operating Co.,* 90 So.2d 460, 461 (Fla.1956); Annot., *Duty and Liability of Innkeeper to Visitor or Caller of Registered Guest,* 58 A.L.R.2d 1201, § 2 (1958); 40 Am.Jur.2d *Hotels, Motels, and Restaurants,* § 84; 43A C.J.S. *Inns, Hotels, and Eating Places* § 21. The rationale for this rule derives from the nature of the lodging business, which presupposes that the owner of an inn should anticipate that registered guests may receive business and social visitors; an invitation to such visitors thereby arises by operation of law out of the relationship between the inn and its registered guests. *Steinberg,* 90 So.2d at 461; *see also Holm v. Investment & Securities Co.,* 195 Wash. 52, 79 P.2d 708, 711 (1938) ("the owner or proprietor of a hotel ... extends an implied invitation to guests specifically invited by tenants to come into the building, and therefore must extend to them the standard of care required for invitees.").

In determining whether visitors to registered guests are invitees, some courts have considered the question to be one of law to be decided by the court. For example, the *Hockaday* court considered whether a plaintiff, who visited the defendant motel to attend a business meeting in the room of a registered guest, was an invitee. The *Hockaday* court determined that the plaintiff was within the scope of the invitation because she was on the premises at a reasonable hour, at the express invitation of the registered guest, for a lawful purpose, and the stairway on which she fell was the nearest means of egress from the motel room to the parking lot. 290 S.E.2d at 765–66. The court in *Hockaday* held that the plaintiff was an invitee at the time of her injury and reversed summary judgment in favor of the motel on the issue of its negligence. *Id.* 290 S.E.2d at 766.

The plaintiff in *Steinberg* visited the defendant hotel to deliver a message to a registered guest. After learning that the guest was not in, the plaintiff explored various lounges and other rooms adjacent to the lobby. She fell when entering a room that had a lower floor level than the adjoining room. The trial court granted summary judgment in favor of the hotel, finding that the plaintiff was a licensee and not entitled to recover under the circumstances. 90 So.2d at 461. Affirming, the appeals court held that when Mrs. Steinberg explored the hotel "for her own pleasure and convenience" she crossed the boundaries of the implied invitation and thus lost her status as an invitee, becoming at most a licensee. *Id.* at 462. The court stated, that as a licensee, the hotel owed to the plaintiff only the duty to refrain from willfully or wantonly injuring her, and there was no evidence of willful or wanton injury. *Id.*

In *Ortner v. Linch,* 128 So.2d 152 (Fla. App.1960), the Florida Appellate Court considered whether the trial court properly entered summary judgment for the defendant hotel on the theory that the plaintiff was a licensee rather than an invitee. The plaintiff in *Ortner* was injured while helping a hotel guest carry her possessions into the hotel room. The appeals court held that, because the plaintiff was a guest of the hotel guest, she was an invitee and the

question of the hotel's alleged negligence was an issue for the jury. *Id.* at 153–54.

Other courts have declined to view the status of a visitor of a registered guest as an issue to be determined as a matter of law, finding instead that whether the visitor satisfies all the elements of invitee status is a question for the jury. In *Kandrach*, the plaintiff's adult son drowned in the motel pool while visiting his fiancee, who was a registered guest at the motel. In the appeal from a directed verdict for the motel, the primary issue was whether the decedent was an invitee, which was based on whether his use of the pool with the registered guest was within both the scope of the invitation extended by the guest and the bounds of the area into which the guest had apparent authority to invite the decedent. The court held that on the basis of the evidence in the record and the applicable law, the issue of whether the decedent was an invitee should have been submitted to the jury. 473 S.W.2d at 198. *See also Parsons v. Drake*, 347 Pa. 247, 32 A.2d 27 (1943) (the question of whether plaintiffs had departed from the scope of their invitation and thereby forfeited their status as invitees was a question of fact for the jury).

Yet other courts have concluded, without further inquiry, that, as a matter of law, a visitor of a registered guest is an invitee who is owed the duty of ordinary and reasonable care. For example, *Zerangue v. Delta Towers, Ltd.*, 820 F.2d 130 (5th Cir. 1987), involved a female plaintiff who visited an acquaintance who was a registered guest of the hotel. Upon leaving the hotel at about 3 a.m., plaintiff was attacked and raped after she unsuccessfully attempted to re-enter the hotel when the lobby door locked behind her. Without discussing whether the plaintiff was at the hotel at a proper time, for a lawful purpose and within the scope of her invitation when she was injured, the *Zerangue* court held that she was an invitee to whom the hotel had a duty to maintain the premises in a reasonably safe condition and to warn of any hidden or concealed peril which was known or reasonably discoverable. *Id.* at 132. The *Zerangue* court cited *Brown v. South-*

*ern Ventures Corp.*, 331 So.2d 207 (La. App.1976), in which the court found that Mr. Brown, who drowned in the motel pool after attending a party at the motel and purchasing coffee in the motel restaurant, was an invitee of the motel. The *Brown* court also did not consider whether Mr. Brown was outside the scope of his invitation in determining that his status was that of an invitee, although in deciding Mr. Brown's status, the court in part relied on the fact that he became a customer himself when he bought the coffee at the motel restaurant. *Id.* at 209.

It is well-established in Arizona that whether a duty exists is a question of law to be decided by the court. *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 543, 789 P.2d 1040, 1044 (1990); *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985).

We adopt the general rule that the status of a visitor of a registered guest is that of an invitee to whom a hotel has a duty to maintain the premises in a reasonably safe condition and to warn of any hidden or concealed peril which is known or reasonably discoverable. At the same time we note that Arizona courts have determined as a matter of law whether a person's status changed to a licensee or trespasser because the person ventured outside the boundaries of the business invitation. For example, in *Nicoletti*, the court found that a department store employee who tripped when she cut across a parking lot planter lost her status of invitee and became a licensee or trespasser. The court stated that "[t]he landowner owes a special duty to an invitee, but this duty may be diluted or extinguished if the invitee engages in explicitly or impliedly unpermitted activities or goes beyond the area to which he or she is invited." 131 Ariz. at 143, 639 P.2d at 333. In *Shiells v. Kolt*, 148 Ariz. 424, 714 P.2d 1319 (App.1986), an appeal from summary judgment dismissing the plaintiff's personal injury complaint, the court held that the defendant had no legal obligation to protect the plaintiff when the plaintiff vaulted over a railing at a gas station and was injured when it collapsed.

The court stated that "[w]hen an invitee engages in an explicitly or impliedly unpermitted activity, he cannot recover because there is no duty owed and thus no actionable negligence." *Id.* at 425, 714 P.2d at 1320. The court found that vaulting over the railing was an unpermitted, uninvited and unforeseeable use of the railing. *Id.*

■ Thus we hold that when a visitor to a registered guest is engaging in activities in which a guest of the hotel would normally engage the hotel owes the same standard of care to the visitor as to the registered guest. We believe the rule regarding visitor status in *Hockaday* and similar cases is sound and suitable for application in Arizona. Accordingly, we adopt this rule for use in determining the duty of motel, hotel, and inn owners to visitors of registered guests. Although the court below applied the correct rule, it reached an incorrect conclusion regarding Mrs. Woodty's status and the motel's resulting duty to her.

The rule we adopt is consistent with the rationale stated by other courts for imposing on innkeepers a duty to visitors of registered guests. It should be no surprise to innkeepers that persons who use temporary lodgings may invite business and social callers to their rooms and to areas on the premises that are open to the use of registered guests. The nature of the lodging business is such that the owner's duty to exercise ordinary or reasonable care for the safety of registered guests while on the premises of the motel, hotel or inn should also extend to guests' visitors on the premises.

This rule does not impose an unfair burden of care on hotel owners or innkeepers. As noted above, the duty of an owner to its registered guests is to maintain the premises in a reasonably safe condition. If the owner fulfills this duty to its registered guests, the premises likewise will be reasonably safe for the guests' visitors. Because reasonably safe premises are safe for both registered guests and their visitors and dangerous conditions are dangerous to both, we know of no reason why owners should be potentially liable to reg-

istered guests if they fail to maintain reasonably safe premises, but not similarly liable to visitors of those guests.

In light of the rule expressed above, the trial court erred in granting summary judgment in favor of the motel based on its finding that no duty was owed to Mrs. Woodty due to her presence in the motel room overnight and after the registered guest left in the morning. Furthermore, the trial court erred in determining that the motel had no duty to Mrs. Woodty because her presence was adverse to the innkeeper's legitimate business interest. According to an affidavit of the manager of the motel, Mrs. Woodty was not a registered guest and thus her actions violated the rules of the motel regarding the registration of persons staying in a room. However, the activity in which Mrs. Woodty was engaged did not enhance the risk of causing a fire. A registered guest's violation of a rule does not obviate the motel's duty to a visitor on the premises nor does it insulate the motel from liability for its own negligence. Here, Mrs. Woodty was a visitor of a registered guest engaging in the same type of activity (sleeping in a bed) in which a registered guest would normally engage. The motel's duty to her was the same as its duty to the registered guest.

■ In summary, we hold that because Mrs. Woodty was a visitor of a registered guest of the motel, she was an invitee of the motel and the motel owed her the duty of exercising ordinary or reasonable care for her safety while on its premises. Whether the motel breached this duty and thus was negligent is ordinarily a question for the jury. *See Nicoletti*, 131 Ariz. at 142, 639 P.2d at 332; *Robinson v. Western Intern. Hotels Co.*, 170 Ga.App. 812, 318 S.E.2d 235, 237 (1984) ("The question of a violation of 'the duty to exercise ordinary care to afford [guests] premises that are reasonably safe for use and occupancy,' ... is a question of negligence and this court is bound by the rule that such matters are for the jury except in plain, palpable and indisputable cases.") However, it may be possible for the motel to show that as a matter of law, there is no evidence of

a breach of duty in this case. *See Coburn v. City of Tucson*, 143 Ariz. 50, 53–54, 691 P.2d 1078, 1081–82 (1984) (holding that as a matter of law the city did not breach its duty to maintain an unobstructed intersection).

## B. STRICT LIABILITY FOR FAULTY COOLING/HEATING UNIT

The second issue raised by appellant is whether the trial court erred in denying his motion for summary judgment in which he argued that the motel was strictly liable for Mrs. Woodty's wrongful death. We will not decide this issue on the merits because the denial of a motion for summary judgment generally is neither appealable nor subject to review from a final judgment in the same action. *State v. Superior Court of Maricopa County*, 140 Ariz. 365, 366, 681 P.2d 1384, 1385 (1984); *Fleitz v. Van Westrienen*, 114 Ariz. 246, 248, 560 P.2d 430, 432 (App.1977). Furthermore, even if such a denial were appealable, we would be unable to reach this issue because the denial of appellant's motion for summary judgment is not included in the judgment from which Woodty appealed.

## III. CONCLUSION

The summary judgment in favor of the motel is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

EUBANK and KLEINSCHMIDT, JJ., concur.