339 So.2d 382 (1976)
Janice Lynn Houck MAYS, Plaintiff-Appellant,
v.
PICO FINANCE COMPANY, INC., Defendant-Appellee.
No. 13054.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1976.
Rehearing Denied December 6, 1976.
Writ Refused February 9, 1977.
*383 Kidd & Katz by Paul H. Kidd, Monroe, for plaintiff-appellant.
Davenport, Files, Kelly & Marsh by William G. Kelly, Jr., Monroe, for defendant-appellee.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied December 6, 1976.
HALL, Judge.
Plaintiff sued Donald Shockley and Pico Finance Company of Ruston, Inc. for damages, alleging that Shockley, an employee of Pico Finance, raped her. Pico was made a party both on the theory that Pico was negligent in hiring Shockley and on the theory that Shockley was acting within the course and scope of his employment at the time of the alleged rape. Plaintiff requested a jury trial.
Shockley did not answer and the issue of his liability was tried before the judge on confirmation of default. Both the issue of liability of Pico Finance and the amount of damages suffered by plaintiff were tried before the jury. The jury returned the following special verdicts: (1) plaintiff was raped by Shockley; (2) plaintiff suffered no damages; (3) Shockley was not acting within the scope of his employment at the time of the rape; (4) Pico should have known of the criminal record and past history of Shockley; and (5) this knowledge would not have placed Pico on notice that Shockley was likely to commit rape.
The trial judge found that plaintiff made out a prima facie case of wrongful conduct on the part of Shockley, but, on the basis of the jury's finding of no damages, denied recovery against Shockley. Judgment was rendered denying recovery against both defendants and plaintiff appealed. We affirm the judgment in favor of Pico Finance and reverse the judgment denying damages against Donald Shockley.
Facts
On Friday, March 19, 1974, plaintiff was sent to Pico's office by an employment agency to apply for a job. She was interviewed by Shockley, assistant manager of Pico. Shockley offered to take her to Monroe the following day for an interview with Mr. McFarland, who was the manager of the Monroe office, but who plaintiff thought was a district manager whose approval was needed for her employment. *384 Plaintiff agreed to this proposed trip and met Shockley about noon the following day, Saturday, at the Holiday Inn in Ruston. She and Shockley went in his car to Monroe. On reaching Ouachita Parish they stopped at the Rusty Nail, a tavern adjacent to the Rodeway Inn in West Monroe, but it was closed. They then went to Pico's office on Louisville Avenue in Monroe, where Shockley thought he might find McFarland, but the office was closed. They went across the street to the Chateau Lounge and had some drinks. Shockley attempted to reach McFarland by phone at his home while he was in the Chateau but was unsuccessful. The barmaid at the Chateau attempted to reach McFarland for Shockley by calling the Ramada Inn where she said McFarland often went to have a drink, but McFarland was not there. Plaintiff and defendant then returned to the Rusty Nail, which had opened, and had more drinks. Shockley then rented a room at the Rodeway Inn.
Plaintiff testified she believed the room was McFarland's room. Shockley testified she was well aware he had rented the room. At the time the room was acquired, plaintiff and defendant had been together from about 1:00 p.m. to 5:00 p.m. and had several drinks. Plaintiff wanted to make a call to Ruston and because it was a long distance call, Shockley suggested she make it on the room phone. She went to the room alone and after she had been there for some time, Shockley came into the room. She testified that he yanked the phone from her hand, and that over the next hour or two he raped her three times. Shockley admitted the sexual relations with plaintiff but stated she consented to same.
A barmaid brought drinks to the room twice and on one occasion she saw plaintiff lying in bed covered up to her neck. The barmaid said plaintiff's hair was neat and that plaintiff made no indication to her that she was having any problem.
The plaintiff testified she eventually was able to get Shockley to take her back to the Rusty Nail where she succeeded in getting away from him. She was picked up in the street in front of the Rusty Nail by a boy in a pickup truck and she told him she had been raped. He carried her to the home of friends and thereafter the incident was reported to the authorities. Shockley was subsequently prosecuted and pled guilty to simple rape.
Shockley had only been employed at Pico for 4½ months and his job as assistant manager did not include the duty of interviewing applicants for employment. In fact, at the time he interviewed plaintiff on Friday, March 16, the vacancy which had existed in Pico's Ruston office had already been filled by virtue of interviews with a job applicant by the manager of the Ruston office, Mr. Disman. The Pico office in Ruston was completely autonomous from the Pico Monroe office managed by McFarland. Shockley had no duties whatsoever in connection with the Monroe office. He had never met McFarland, and only had a vague notion that there might have been a vacancy in the Monroe office.
Wrongful Conduct
The testimony as to what happened in the motel room is in sharp conflict. The jury was undoubtedly influenced, and properly so, by Shockley's guilty plea in finding plaintiff was raped. The trial judge found "plaintiff had not entirely consented to all of the acts of the defendant Shockley" and that he was guilty of wrongful conduct toward her. There is substantial evidence in the record to support the findings of the jury and the trial judge. This court will not disturb those factual findings. Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
Course and Scope of Employment
The Supreme Court recently outlined the test for determining whether the intentional tort of an employee was within the course and scope of employment so as to make the employer liable for damages under LSA-C.C. Art. 2320. The determinative question is whether the tortious conduct of the employee "was so closely connected in time, place, and causation to his *385 employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." LeBrane v. Lewis, 292 So.2d 216 (La.1974).
The tortious conduct in the instant case was certainly not closely connected in time, place or causation with Pico Finance of Ruston, Inc. Shockley was not working on the Saturday in question. His duties did not include hiring employees nor any other activity inconnection with the Monroe office. His trip to Monroe with plaintiff was purely for his own personal considerations. Shockley was not acting for Pico on the day of the tortious conduct. Shockley may have given plaintiff the impression he was acting for Pico, but he was not actually doing so. He was not performing any duty which he was employed to perform. Jefferson v. Rose Oil Company of Dixie, 232 So.2d 895 (La.App. 2d Cir. 1970). The motive of the employee in performing the act is of paramount importance. St. Paul Fire & Marine Insurance Company v. Roberts, 331 So.2d 529 (La.App. 1st Cir. 1976). Shockley's motives were strictly personal. Shockley was not acting in the course and scope of his employment at the time of the wrongful conduct and his employer is not responsible for his intentional tort under LSA-C.C. Art. 2320.
Negligence
Plaintiff also contends Pico Finance was negligent in hiring Shockley and that such negligence was a legal cause of the harm to plaintiff. Pico did not make more than a cursory check of Shockley's background. A thorough investigation would have revealed that Shockley had pled guilty to theft, was an alcoholic, and had personality problems. However, there was no evidence of past sex offenses. The jury found that Shockley's past history could not reasonably lead Pico to anticipate that Shockley might commit rape. We agree with that finding. Even if Pico had a duty to protect plaintiff from the actions of an off-duty employee she originally met at the office, which is highly questionable, the harm plaintiff suffered could not have been foreseen.
In Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir. 1973), writ refused, 290 So.2d 899, 901 (La. 1974), Gulf's employee had a prior conviction of theft. He committed arson, and Lou-Con sued Gulf for damages. The court found the theft conviction did not make the commission of arson reasonably foreseeable and, therefore, Gulf was not liable in tort. It is equally unforeseeable that a man with a past history only of crimes against property will commit rape. Pico is not liable on the basis of negligence.
Damages
Although we affirm the judgment in favor of defendant, Pico Finance, the judgment denying recovery of damages against defendant Shockley cannot stand. Both the trial judge and the jury found wrongful conduct on the part of defendant toward plaintiff. Plaintiff is entitled to damages for the forcible offense against her person. The testimony of a psychiatrist offered by plaintiff is not persuasive and obviously was not accepted by the jury. Plaintiff did not see the psychiatrist, to whom she was referred by her attorney, until more than nine months after the incident and then did not pursue treatment by him until nine more months later, shortly before trial.
Plaintiff is entitled to some damages for physical and mental injury, distress and humiliation. Under all of the circumstances, we consider an award of $5,000 to be within the lower range of discretion and fix the award at that amount.
Decree
For the reasons assigned, the judgment rejecting plaintiff's demands against Pico Finance Company of Ruston, Inc. is affirmed. The judgment rejecting plaintiff's demands against Donald Shockley is reversed, and it is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Janice Lynn Houck Mays, against *386 defendant, Donald Shockley, in the amount of $5,000, together with legal interest thereon from date of judicial demand until paid and all costs of this proceeding, including the cost of appeal.
Affirmed in part, reversed in part, and rendered.