540 So.2d 363 (1989)
Mary SMITH
v.
ORKIN EXTERMINATING COMPANY, INC., et al.
No. CA 87 1540.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
*364 Lennie Perez and Richard Guerriero, Baton Rouge, for plaintiff-appellee, Mary Smith.
Vicki Crochet, Baton Rouge, for defendant-appellant, Orkin Exterminating Co., Inc.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
This is an appeal by defendant, Orkin Exterminating Company, Inc., in a personal injury suit arising out of injuries sustained in a sexual assault conducted by one of Orkin's employees.[1] For reasons stated herein, we affirm.

*365 FACTS AND PROCEDURAL HISTORY
The facts of this case are not in dispute and the issues are only of law. Plaintiff, Ms. Smith,[2] hired the defendant, Orkin Exterminating Company, Inc., to provide exterminating services for her home. In the process of providing those services, Orkin sent into plaintiff's home one of its employees, Mr. Vincent Johnson.
Mr. Johnson had been hired as a service representative of Orkin in March of 1977. As part of the security measures that Orkin had established to protect its customers and itself, Mr. Johnson had to undergo vigorous screening prior to being hired. That screening included the taking of a mandatory polygraph examination as well as a background investigation. During the initial polygraph examination, Mr. Johnson was extensively questioned as to any criminal activity in his past. Mr. Johnson passed the polygraph and was hired.
As an additional protective measure for its customers and itself, all Orkin employees were required to submit to yearly polygraph examinations as a continuing security monitor. Mr. Johnson took such a security polygraph on February 21, 1982, and was allowed to continue his employment duties entering customers' homes for pest control services. Prior to this polygraph, Mr. Johnson had been arrested for burglary and had raped another Orkin customer. On May 13, 1983, Mr. Johnson, while in the performance of his exterminating duties, formulated and began carrying out the assault which became the subject of this suit. While spraying plaintiff's home, Mr. Johnson unlocked a window to insure he would have access upon his return to assault plaintiff. On May 15, 1983, Mr. Johnson returned and raped the plaintiff. After filing suit, the trial judge, on submitted briefs, memorandum, and argument found Orkin liable and this appeal followed.

LAW
We note at the outset that this is an ordinary negligence suit based upon Orkin's duty as a provider of services carried out in a customer's home.[3] Whether negligence is actionable in Louisiana is determined by a duty-risk analysis.
The pertinent inquiries are:
I. Whether the conduct of which plaintiff complains was a cause-in-fact of the harm;
II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
III. Whether there was a breach of that duty; and
IV. Damages.
Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 at 1370 (La.1984).

CAUSE-IN-FACT
The first inquiry is whether the negligence of Orkin was the cause-in-fact of plaintiff's injuries. The trial judge, in his reasons for judgment states, in relevant portion:
The main basis of the case, as the Court sees it, is that the employee had been arrested in Vidalia, Louisiana a few days before he was given his yearly polygraph test. The plaintiff takes the position that if the polygraph test had been administered properly that there would probably have been a determination that this employee had recently been arrested for the crime of burglary and that therefore, the employer should have taken the necessary steps to prevent him from going into homes as a result of his employment.

and further:
The Court feels that a preponderance of the evidence indicates that Orkin did not do everything that it could do under the circumstances. The court is of the opinion that the polygraph test should have been fine tuned a little bit more, *366 particularly in this instance. Therefore, the Court finds liability on the part of Orkin. (Emphasis added).
Hence, the trial judge found that but for defendant's negligent administration of the polygraph, plaintiff would not have been injured. The cause-in-fact of plaintiff's injuries was the negligent administration of Orkin's own chosen method of protecting itself and its customers. The findings of fact of the trial judge are to be given great deference. Canter v. Koehring Company, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262 (La.App. 3d Cir.), cert. denied, 374 So.2d 660 (La.1979). Cause-in-fact is usually enunciated as whether the defendant's conduct was a "substantial factor" in bringing about the harm. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
Here, Orkin had recently given a polygraph examination to Mr. Johnson which was calculated to screen illegal activity of any of its employees. Its failure to ask the proper questions allowed Mr. Johnson to continue in his employment. The continued employment gained him access to plaintiff's home where he unlocked her window. "But-for" Orkin's failure to properly screen its employee, the plaintiff would not have been raped.
The defendant cannot escape liability for an intentional tort if its negligence led to that tort. Harris, 455 So.2d at 1371. The questions asked of Mr. Johnson in his regular yearly security check were different than the questions asked in his pre-employment screening polygraph. In the regular security polygraph given yearly there were seventy-four questions asked, with only six concerning the employee's relationship with customers. No questions were asked about prior arrests or assaults and the vast majority of the questions were targeted to protect Orkin rather than its customers.[4] This, despite the fact that the initial screening did contain questions about prior criminal activity. The trial judge found this failure to properly screen was the cause-in-fact of plaintiff's injuries, and we find no error in that determination.

DUTY
Duty is a question of law. Generally there is no duty to protect others from the criminal activity of third persons. However, when a duty to protect others against such criminal conduct has been assumed, liability may be created by the negligent breach of that duty. Harris, 455 So.2d at 1364. Moreover, when an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a crime against a third party, he has a duty to exercise reasonable care in the selection of that employee. Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192, 199 (La.App. 4th Cir. 1973), cert. denied, 290 So.2d 899 (La.1974). Under the unique circumstances of Orkin's business, we also believe that there is a continuing duty to exercise reasonable care in the retention of its employees.
Dean Prosser, in examining responsibility for intentional torts, explains situations which may give rise to liability. In his treatise he writes:
There are, however, other situations, in which either a special responsibility resting upon the defendant for the protection of the plaintiff, or an especial temptation and opportunity for criminal misconduct brought about by the defendant, will call upon him to take precautions against it. The responsibility for protection may arise out of a contract, by which the defendant has agreed to provide it; or it may be founded upon some relation existing between the parties, such as carrier and passenger, innkeeper and guest, invitor and business visitor, school and pupil, employer and employee, landlord and tenant, and no doubt others. The carrier, for example, may be required to protect its passengers from third persons who have threatened *367 them with violence, or are drunk or quarrelsome, or to guard or warn them against external attack or look after its switches in a neighborhood which is known to be frequented by criminal characters. Another possibility is that the defendant's special responsibility may arise because he is in a position to control the dangerous person, or is in some other unique position to prevent the harm, and so may be held to have an obligation to exercise reasonable care to do so.

There are other situations in which the defendant will be held liable because his affirmative conduct has greatly increased the risk or harm to the plaintiff through the criminal acts of others. The defendant may bring the plaintiff into contact with individuals of known criminal tendencies, as for example, by hiring them under conditions in which opportunity for crime is afforded. (Emphasis added).
Prosser and Keeton on Torts, Sec. 33, p. 201-203 (West 1984) (Footnotes omitted). This is such a case.
Orkin's business is somewhat unique in that the service it renders requires that it send its employees directly into customers' homes. For this service Orkin is compensated and earns profits. Orkin's duty in these situations is to exercise reasonable care in the hiring and retention of those individuals it chooses to send into customers' homes. Orkin has recognized these duties and instituted security measures to prevent harm to itself and to its customers. Orkin's routine method of carrying out that duty was to have its employees take a yearly polygraph examination.
While Harris and cases cited therein deal mostly with a retail establishment's premises, all of them recognize a reasonable standard of care for the protection of their patrons. It would seem to this court that the duty to protect patrons against criminal activity in a business which maintains its own premises would be lower than that duty which is expected of a business which sends its employees into a private home to perform regular services for profit.
Defendant cites Lou-Con, Inc. for the proposition that even if it had the duty, it carried out that duty in a reasonable fashion. Orkin maintains that it would have no reason to suspect a rape even had the polygraph examination asked the questions which would have revealed Johnson's prior arrest. In this we believe defendant is in error.
Lou-Con, Inc. involved a case of arson in plaintiff's building set by an employee of defendant who had been sent to perform janitorial duties in plaintiff's building. The employee set fire to plaintiff's structure to hide a theft which he had perpetrated. While the court refused to impose liability on defendants on the negligence issue, they refused to do so because the steps taken to protect the plaintiff were reasonable. One of the steps taken in Lou-Con, Inc. was a routine police check of its employee's arrest record. Had Orkin performed this check, it would have found out about Mr. Johnson's arrest record. Lou-Con, Inc. does not protect the defendant from the high standard of duty required of those in this type of business.

BREACH
Orkin breached its duty to the plaintiff by failing to properly administer its own chosen method of providing security with due care. Of the seventy-four questions asked during the polygraph examination all but six of the questions were aimed at protecting Orkin and had little to do with preventing harm to its customers.[5] The six questions asked Mr. Johnson were only calculated to find out if he had stolen or if he was a drug abuser. In contrast to these six questions, Orkin asked sixty-eight questions covering all aspects of Mr. Johnson's relationship with Orkin.
Orkin's lack of care in administering the polygraph is demonstrated by the fact that a thief and a rapist could pass. Previous to the test, Mr. Johnson had been arrested for burglary and had twice raped another female *368 customer of Orkin. Orkin's customer-related questions were so sparse and incomplete that a rapist, who was using his job to further his criminal activities, could tell the truth and still pass the exam.
Orkin's duty was to take reasonable steps to protect its customers from a predictable risk of criminal activity by its employees. Orkin recognized such a duty in the instruction manuals given to its managers which provide the guidelines for the hiring and retention of employees. Additionally, Orkin's preface to its yearly security polygraph provides:
1. Orkin's working environment requires that all branch employees hold a position of responsibility and trust: Our employees go unsupervised into our customer's homes, handle potentially harmful chemicals, operate motor vehicles and collect or account for monies due to Orkin. In order to protect our customers, employees and company, a "Security" type polygraph examination is requested of all branch employees. The security polygraph is designed to identify those few individuals who violate the responsibility and trust delegated to them. (Emphasis added).
The breach of this duty produced results reasonably associated with the risk it was provided to protect, and we so hold.

DAMAGES
The findings of the trial court as to damages are entitled to great weight and will not be disturbed unless there is an abuse of discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). In this case, the plaintiff was raped while her children were in the house and aware of the assault. Mr. Johnson held a knife to her throat and forced her to engage in sex more than one time. The plaintiff still has trouble explaining what took place to her young daughter. We believe the facts as cited support the award of $125,000.00 and decline to disturb the discretion of the trial judge.

CONCLUSION
Orkin is in a unique business that as a matter of course sends employees into the homes of its customers to perform services for which it charges and earns a profit. Orkin's place of business is essentially a customer's home. Because Orkin sends employees into homes, it is subjected to a higher standard of duty to protect against intentional torts than is a regular business. Orkin recognized this duty and provided measures to meet this requirement. The measures it chose were carried out in a negligent fashion. This negligent attempt at compliance with its duty constituted a breach which allowed the harm reasonably calculated to be within the risk attempted to be prevented by the duty. It was, therefore, the cause in fact of plaintiff's injuries. Because we believe that Orkin was negligent, we affirm. All costs of this appeal to be borne by the appellant.
AFFIRMED.

*369
 APPENDIX A
 Questions for all Orkin Employees
 Yes No
 I. Do you know of any employee involved in thefts from Orkin?
 1.) Do you know of any past or present employees stealing from Orkin?
 2.) Do you know of any past or present employee stealing Checks from Orkin?
 3.) Do you know of any past or present employee stealing Petty Cash from Orkin?
 4.) Do you know of any past or present employee stealing Money Orders from Orkin?
 5.) Do you know of any past or present employee stealing Payments from Orkin?
 6.) Do you know of any past or present employee stealing Chemicals from Orkin?
 7.) Do you know of any past or present employee stealing Supplies from Orkin?
 8.) Do you know of any past or present employee stealing Equipment from Orkin?
 9.) Do you know of any past or present employee stealing Fixtures from Orkin?
 10.) Do you know of any past or present employee stealing Parts from Orkin?
 11.) Do you know of any past or present employee stealing Gasoline from Orkin?
Theft includes giving away property, Money, Services, borrowing from Collections, Odd Jobs for
friends, Personal use, & Relatives
 II. Have you been involved in any theft of Orkin Property?
 1.) Have you used Chemicals for personal use?
 2.) Have you stolen Supplies for personal use?
 3.) Have you stolen Equipment for personal use?
 4.) Have you stolen Fixtures for personal use?
 5.) Have you stolen Gasoline for personal use?
 6.) Have you stolen Parts for personal use?
 III. Have you been involved in any theft of Orkin Money?
 1.) Have you stolen Cash from Orkin?
 2.) Have you stolen Checks from Orkin?
 3.) Have you stolen Money Orders from Orkin?
 4.) Have you stolen Petty Cash from Orkin?
 5.) Have you stolen Customer Payments from Orkin?
 *IV. Have you been involved in any thefts from customers?
 *1.) Have you taken any customer property without authorization?
 *2.) Have you taken any customer money without authorization?
 V. Have you falsified Company Records?
 a.) Have you falsified your Time Sheet?
 b.) Have you falsified your Sales Reports?
 c.) Have you falsified your Contracts?
 d.) Have you falsified Bank Deposits?
 e.) Have you falsified RAC Applications?
 f.) Have you falsified Graphs?
 g.) Have you falsified your Service Lists?

*370
 VI. Have you misused your Company Records?
 a.) Have you showed Company Records to non-Orkin employees?
 b.) Have you given Company Record to non-Orkin employees?
 c.) Have you sold Company Records to non-Orkin employees?
 d.) Have you for personal profit used Company Records?
 e.) Have you destroyed any Company Records?
 f.) Have you misplaced any Company Records?
 VII. Have you used illegal Drugs on the job?
 a.) Have you smoked Marijuana during working hours?
 b.) Have you smoked Marijuana during Lunch Break?
 c.) Have you smoked Marijuana prior to contacting a Customer?
 d.) Have you used any Drugs during working hours?
 e.) Have you used any Drugs during Lunch Break?
 f.) Have you used any Drugs, prior to contacting a Customer?
 g.) Have you engaged in the sale of illegal drugs?
VIII. Have you used any Alcoholic Beverages on the job?
 a.) Have you drank any Alcoholic Beverages during working hours?
 b.) Have you used any Alcoholic Beverages during Lunch?
 c.) Have you drank any Alcohol prior to contacting a customer?
 IX. Do you have any outside interest that competes with Orkin?
 a.) Do you own a competing business?
 b.) Do you have interest in a competing business?
 c.) Have you received Money from non-Orkin personnel for leads?
 d.) Have you received Gifts from non-Orkin personnel for leads?
 e.) Have you traded services for something of value?
 f.) Have you done odd jobs, for personal profit?
 X. Have you charged personal long distance phone calls to Orkin?
 XI. Have you improperly used an Orkin Motor Vehicle?
 a.) Have you driven a Co. Vehicle with your License suspended?
 b.) Have you driven a Co. Vehicle with your License revoked?
 c.) Have you driven a Co. Vehicle with your License restricted?
 d.) Have you improperly used a Orkin Vehicle for personal reason?
 e.) Have you ever used an Orkin Vehicle for personal reason charging gas to Orkin?
 f.) Have you ever allowed any un-authorized person to drive an Orkin Vehicle?
 XI. Have you ever intentionally exaggerated a customers problem?
 XII. Have you intentionally applied Chemicals or Materials not in accordance with the Labels?
 1.) Have you ever applied Chemicals not in a adequate amount?
 2.) Have you ever applied the wrong chemicals?
 3.) Have you ever used Chemicals in the wrong way?

NOTES
[1] Plaintiff originally filed suit against both Orkin and its employee, but at trial plaintiff did not pursue the claims against Mr. Johnson and the judgment rendered was only against Orkin.
[2] Mary Smith is an imaginary name which was originally assigned to the suit to protect the identity of the victim of the rape. At a later time, the actual name of the victim/plaintiff was substituted.
[3] The action is based upon Orkin's negligence, not the negligence of its employee. It is Orkin's negligence which the trial judge ruled was the cause in fact of plaintiff's injuries.
[4] See attached Appendix A containing questions asked during the regular yearly security polygraph.
[5] See appendix A.