658 So.2d 691 (1994)
Kristin JACKSON
v.
Joseph L. FERRAND.
No. 94-CA-1254.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 1994.
Writ Denied March 24, 1995.
*692 Patrick G. Kehoe, Jr., Birdsall, Rodriguez & Kehoe, New Orleans, and Gary P. Landry, Kenner, for plaintiff, appellant.
G. Bruce Parkerson, Patricia A. Lynch, Phelps Dunbar, New Orleans, for defendant, appellee.
Before BARRY, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
This case involves issues which are res nova in Louisiana lawwhether an innkeeper may be held liable for damages suffered by a guest at the hotel who was sexually molested by a hotel employee after the employee's work hours, at a location removed from the hotel premises, while the guest was on a "date" with the hotel employee. The trial court granted an exception of no cause of action in favor of the defendant Hilton Hotel. Plaintiff Kristin Jackson has appealed. We affirm.

1. Exception of no cause of action

The purpose of an exception of no cause of action was recently explained by the Louisiana Supreme Court as follows:
The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well pleaded facts in the petition must be accepted as true.
City of New Orleans v. Board of Commissioners, 93-0690, p. 2 (La. 7/5/94); 640 So.2d 237, 241 (citations omitted). The court further explained the standard for granting an exception of no cause of action as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the non-moving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the court of appeal and [the supreme] court should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition we follow the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide for relief on any possible theory.
As a practical matter, an exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insuperable bar to relief. In other words, dismissal is justified only when the allegations of the petition itself clearly demonstrate that the plaintiff does not have a cause of action or when its allegations indicate the existence of an affirmative defense that appears clearly on the face of the pleading.
Id. at pp. 28-29; 640 So.2d at 253 (citations omitted).
Thus, in the instant case, this court is required to make a de novo review of the plaintiff's petition to determine whether the facts alleged by Ms. Jackson, accepted in the light most favorable to her, and with every doubt resolved in her behalf, are sufficient to support a cause of action against the Hilton Hotel under any legal theory of recovery.

2. Facts as alleged by plaintiff

The following facts were alleged by the plaintiff in her original petition:[1]
*693 Ms. Jackson travelled to New Orleans with various members of her family in late November 1992 to attend the "Bayou Classic" football game between Grambling and Southern universities; they stayed at the Hilton Hotel, where Joseph L. Ferrand was employed. While a guest at the hotel from Thursday until Saturday, Ms. Jackson encountered Ferrand a number of times; on some of those occasions, Ferrand flirted with Ms. Jackson or otherwise expressed an interest in her.
On Saturday afternoon, prior to the Bayou Classic game, Ferrand noticed Ms. Jackson sitting on the floor outside her room. After learning that Ms. Jackson was locked out, Ferrand went to some other area of the hotel, then returned with a master key, which he used to admit Ms. Jackson into her room. After opening the door, Ferrand followed Ms. Jackson into the room, demanding proof that she was in fact a guest in that room. After Ms. Jackson convinced him that she belonged in the room, Ferrand remained in her room for some period of time, flirting with Ms. Jackson and asking her to attend post-game parties with him later that night. Ms. Jackson also alleged that Ferrand "used his position as a hotel employee to gain her trust and confidence."
Ms. Jackson accepted Ferrand's invitation to accompany him to post-game parties later in the day when he phoned her room. Prior to accepting his invitation, Ms. Jackson consulted her sisters, who advised her to go on the date with Ferrand, saying that she would undoubtedly be safe because Ferrand was a trusted employee of the Hilton Hotel who had access to the master key.
Ferrand picked Ms. Jackson up outside the lobby area of the Hilton Hotel, then drove her to a nightclub near the hotel, where he left Ms. Jackson alone for a short period of time while he talked with some friends. Upon his return, Ferrand was anxious to leave that party and go to others. Ms. Jackson and Ferrand went to a party at a second nightclub, then left when Ferrand stated he wanted to make a brief visit to a friend. They returned to Ferrand's car, where the plaintiff soon lost consciousness. Sometime thereafter, Ferrand drove Ms. Jackson back to the Hilton Hotel and dropped her off outside the lobby area.
Ms. Jackson claims that her unconsciousness was caused by the ingestion of "some substance" given to her by Ferrand "and/or his associates or cohorts." During the time she was unconscious, Ms. Jackson claims that she was sexually molested by Ferrand "and possibly others." Upon her return to the Hilton Hotel, Ms. Jackson and her family reported to hotel security that she had been raped, and the hotel security phoned the New Orleans Police. Ms. Jackson was eventually taken to Charity Hospital.
Ms. Jackson originally filed suit against Ferrand only, alleging that she had been "kidnapped, sexually assaulted, subject to extreme emotional distress, and suffered other physical and mental injuries" resulting from Ferrand's actions and possibly from the actions of "other persons presently unknown but whose identities may be discovered," as well as "by the actions and/or omissions of persons who negligently hired him, negligently supervised him, or otherwise are liable for [her] injuries and damages either directly, indirectly, or as a result of respondeat superior." Further, Ms. Jackson prayed for judgment against Ferrand "as well as against any other persons who may also be liable for [Ferrand's] actions."
Despite the fact that Ms. Jackson alleged twice in her original petition that Ferrand was in the "course and scope" of his employment "at all times material hereto," the fact that Ms. Jackson alleged that Ferrand used his position as a hotel employee to "gain her trust and confidence," the fact that Ms. Jackson claimed that her damages were caused in part by actions and omissions of persons who negligently hired and supervised Ferrand, and the fact that Ms. Jackson sought judgment against "other persons who may also be liable for [Ferrand's] actions," the Hilton Hotel was not named as a defendant in the original petition.
*694 Thereafter, by Supplemental and Amended Petition, Ms. Jackson named as a defendant "Hilton Hotel Corporation d/b/a New Orleans Hilton Riverside Hotel" (Hilton Hotel). In alleging the liability of the Hilton Hotel, Ms. Jackson also added the following paragraph:
That the defendant, Hilton Hotels Corporation d/b/a New Orleans Hilton Riverside Hotel is liable to petitioner for negligent hiring, supervision and training of the defendant, Joseph Ferrand, and is liable unto petitioner under the theory of respondeat superior.

The Supplemental and Amended Petition seeks judgment against the Hilton Hotel.
After Ms. Jackson filed her Supplemental and Amending Petition, the Hilton Hotel filed an exception of no cause of action, with an accompanying memorandum. Thereafter, prior to the hearing on the original exception of no cause of action, Ms. Jackson filed a Second Supplemental and Amended Petition.
In her Second Supplemental and Amended Petition, Ms. Jackson added the following allegations[2] against the Hilton Hotel:
22.
That the Defendant, Hilton Hotels Corporation d/b/a New Orleans Hilton Riverside Hotel (hereinafter referred to as "Hilton"), provided its employee, Joseph L. Ferrand (hereinafter referred to as "Ferrand"), with a unique opportunity to commit crimes against Plaintiff and/or hired him under conditions in which opportunity for crime was afforded, and breached its duty to its hotel guests/visitors to exercise reasonable care in the selection/hiring and retention of its employees.
23.
That the Hilton knew or should have known that Ferrand had a criminal record which upon information and belief included theft, felony theft of stolen merchandise, carrying a concealed weapon, and such other crimes as may be disclosed through the discovery process.
24.
That the Hilton breached its high standard of duty to Plaintiff and its guests/visitors of properly screening and continuing to screen Ferrand and its employees, including but not necessarily limited to performing routine police checks and administering polygraph tests.
25.
That upon information and belief Ferrand openly and notoriously used the trappings and privileges of his position while in the course and scope of his employment to formulate and begin carrying out his assault on Plaintiff, including but not necessarily limited to openly flirting with hotel guests in public areas of the hotel and in the presence of other guests and hotel employees, using his position and access to the hotel's passkey to gain Plaintiff's confidence and lower her defenses, and both picking up a hotel guest such as Plaintiff on hotel property and returning her, after his assault upon her person, to hotel property, all in open view of hotel employees and management.
26.
That the Hilton breached its high standard of duty to Plaintiff and its guests/visitors of properly and adequately supervising Ferrand.
27.
That the Hilton breached its duty not to take affirmative acts to increase the peril of its guests/visitors such as Plaintiff, including but not necessarily limited to giving access to the hotel's passkey to an employee who upon information and belief had an extensive criminal record.
28.
That the Hilton breached its high standard of duty to warn Plaintiff and its *695 guests/visitors of hidden and concealed perils which it knew or should have known, such as the criminal record of Ferrand.
29.
That as a proximate cause of the foregoing facts, circumstances, and breaches of duty, as well as those others as shall be uncovered through the discovery process, Plaintiff suffered and continues to suffer serious injuries and damages for which she is entitled to recover from the Hilton, and that the Hilton is liable jointly, severally, and solidarily for all damages incurred by Plaintiff.
After the filing of Ms. Jackson's Second Supplemental and Amended Petition, the trial court granted the request of the Hilton Hotel to continue the scheduled hearing on the exception of no cause of action based on the first Supplemental and Amended Petition. Thereafter, the Hilton Hotel filed an exception of no cause of action to Ms. Jackson's Second Supplemental and Amended Petition. After the hearing on the original exception of no cause of action, the trial court issued judgment "dismissing plaintiff's petition" with prejudice. Ms. Jackson then filed a Motion for New Trial and/or Rehearing. Thereafter, the trial court held another hearing, at which he granted Ms. Jackson's motion for new trial and/or rehearing, but also granted the Hilton Hotel's exception of no cause of action on Ms. Jackson's Second Supplemental and Amended Petition, again dismissing Ms. Jackson's petition with prejudice. In granting the exception of no cause of action to the Second Supplemental and Amending Petition, the trial court specifically found that "further amendments to the Petition would be futile." The trial court assigned no reasons for judgment.
In appealing the trial court's dismissal of her petition, Ms. Jackson lists nine issues for review. However, those issues can be summarized into two basic questions:
1. Did the plaintiff state a cause of action against the Hilton Hotel based on respondeat superior for the actions of its employee during the course and scope of his employment duties?
2. Did the plaintiff state a cause of action against the Hilton Hotel based on the hotel's direct negligence, especially in light of the Hilton Hotel's heightened duty of care based on its status as an innkeeper?

3. Respondeat superior

Ms. Jackson's first claim that the trial court improperly granted the exception of no cause of action in favor of the Hilton Hotel is based on her contention that her petition is sufficient to state a cause of action in respondeat superior based on her claim, in her original petition, that all of the actions taken by Ferrand on the Saturday in question were taken in the course and scope of his employment duties at the Hilton Hotel.
Respondeat superior, or vicarious liability, in Louisiana is premised on La.C.C. art. 2320, which provides, in pertinent part, as follows:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
This court set out the standard for determining whether an employer can be held vicariously liable in Samuels v. Southern Baptist Hospital, 594 So.2d 571 (La.App. 4th Cir.), writ denied, 599 So.2d 316 (La.1992), as follows:
Employers are answerable for the damage caused by their employees in the exercise of the functions in which they are employed. When determining whether the employer is liable for the acts of an employee, factors to be considered are whether the tortious act was: (1) primarily employment rooted; (2) reasonably incidental to the performance of the employee's duties; (3) occurred on the employer's premises; and (4) occurred during hours of employment. It is not necessary that all factors be met in order to find liability, and each case must be decided on its merits. The fact that the primary motive of the employee is to benefit himself does not prevent the tortious act of the employee from being within the scope of the employment; if the purpose of serving the employer's business actuates the employee to *696 any appreciable extent, the employer is liable.
Id. at 573 (citations omitted).
The following test was also applied in the Samuels case:
"If the tortious conduct of the employee is so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest, it can then be regarded as within the scope of the employer's employment, so that the employer is liable in tort to third persons injured thereby."
Id. at 574, quoting Turner v. State, 494 So.2d 1292 (La.App. 2d Cir.1986).
The facts as alleged by Ms. Jackson are insufficient to hold the Hilton Hotel vicariously liable under either of the above tests. First, clearly Ferrand's actions did not meet any of the four factors because his sexual assault of Ms. Jackson was not primarily employment rooted, was not reasonably incidental to the performance of his duties at the hotel, did not occur on the Hilton Hotel's premises, and did not occur during the hours of Ferrand's employment. Further, none of the facts alleged by Ms. Jackson indicate that Ferrand was actuated "to any appreciable extent" by the purpose of serving the interests of the Hilton Hotel when he sexually assaulted Ms. Jackson; his entire motive was to benefit himself. Finally, Ferrand's sexual assault of Ms. Jackson was not "so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." Thus, Ms. Jackson's petition is insufficient to state a cause of action in respondeat superior against the Hilton Hotel.
This decision is entirely consistent with the jurisprudence on this subject, which has unfailingly held that employers may not be held vicariously liable for torts committed by employees after work hours, off the employer's premises. As this court has previously stated:
The policy underlying the imposition of vicarious liability contemplates the imposition of responsibility upon the employer for damages caused by the employee in the exercise of the functions in which the employee was hired. This purpose is not served if the employee's misconduct occurs when he has abandoned or completed the employment and engages in an activity which is in no manner related to the employer's business.
Williams v. Markel Lumber Co., 566 So.2d 446, 450 (La.App. 4th Cir.), writ denied 569 So.2d 981 (La.1990).
See also, e.g., Washington v. Reed, 624 So.2d 465 (La.App. 2d Cir.1993) (employer not vicariously liable for employee's killing of youth on day off at a location removed from the employer's premises possibly only a matter of a few feet, although altercation began on employer's premises, because employee was acting outside his employment duties); Francioni v. Rault, 570 So.2d 36 (La.App. 4th Cir.1990), writ denied, 575 So.2d 371 (La.1991) (employer not vicariously liable for employee's murder of co-employee after work hours at a location far removed from employer's premises, despite fact that employees left work together and murder may have been motivated by co-employee's discovery of murderer's embezzlement of employer); Williams, 566 So.2d 446 (employer not vicariously liable for injuries sustained by employee's sister when a rail on the employer's truck caused injury to the sister during an unauthorized ride in the employer's truck during the employee's lunch hour at a location removed from the employer's premises); Schaeffer v. Duvall, 421 So.2d 262 (La.App. 4th Cir.1982), writ denied, 427 So.2d 1209 (La.1983) (employer not vicariously liable for gunshot wound inflicted by security guard employee in a bar far removed from the employer's premises more than two hours after the security guard's employment duties ceased); Normand v. City of New Orleans, 363 So.2d 1220 (La.App. 4th Cir.1978), writ denied, 366 So.2d 573 (La.1979) (zoo employer not vicariously liable for employee's action after working hours of allowing child behind *697 a guardrail in close proximity to wild animals, where members of public were never allowed to go, resulting in child being bitten by a caged ape, even though employee's return to zoo was motivated by concern for employer's interests); Mays v. Pico Finance Co., 339 So.2d 382 (La.App. 2d Cir.1976), writ denied 341 So.2d 1123 (La.1977) (employer not vicariously liable for employee's rape of plaintiff job applicant on employee's day off at a location far removed from the employer's premises, despite the fact the plaintiff met the employee on the employer's premises while applying for a job and rape occurred while employee was allegedly helping plaintiff in her effort to obtain job).
On the other hand, the cases in which courts in this state have imposed vicarious liability on employers for torts committed by their employees have consistently involved actions taken during work hours and/or on the employer's premises. See, e.g. Samuels, 594 So.2d 571 (hospital employer vicariously liable for nurse employee's sexual molestation of psychiatric unit patient during work hours, on employer's premises); Williams v. Butler, 577 So.2d 1113 (La.App. 1st Cir.1991) (city recreation and parks commission employer could be vicariously liable for gym supervisor employee's sexual molestation of children involved in gym program, followed by shooting of one child's father, both of which occurred during work hours on employer's premises). These cases are both distinguishable from the instant case by the fact that they both occurred on the employer's premises; both of the torts occurred during the employee's working hours.
Ms. Jackson attempts to avoid this rule by alleging that Ferrand "began carrying out his assault" on her during the course and scope of his employment duties at the Hilton Hotel by flirting with her and by "using his position and access to the hotel's passkey to gain [her] confidence and lower her defenses." However, even assuming that Ms. Jackson's assessment of the situation is correct, the fact that the employee "hatched" the plan to commit a tort and even took affirmative steps toward carrying out that tort during the course and scope of his employment duties is an insufficient ground for imposing vicarious liability on the employer, as demonstrated by Mays, 339 So.2d 382. In Mays, the plaintiff met the employee/rapist, who was the assistant manager of the defendant's Ruston office, on a Friday when she came to the office to interview for a job. Id. During the interview, the employee offered to take the plaintiff to Monroe the next day, Saturday, allegedly for an interview with the manager of the Monroe office, although the plaintiff was told that the manager was a district manager whose approval was necessary for her employment. Id. When the plaintiff and the employee went on the trip, the employee raped the plaintiff. Id.
Despite this set of facts, in which the employee unquestionably took affirmative acts toward committing the tort during his work hours and on his employer's premises, the court found no vicarious liability on the part of the employer because the employee was acting "purely for his own personal considerations" when the tort was committed. Id., 339 So.2d at 385. Further, even though the employee gave the plaintiff the impression he was acting for his employer on the day of the rape, "he was not actually doing so." Id. Certainly if the facts of the Mays case were insufficient to impose vicarious liability on the employer, the facts alleged by Ms. Jackson in the instant case, even when assumed true, are insufficient.
Thus, Ms. Jackson's petition failed to state a cause of action against the Hilton Hotel based on respondeat superior for the actions of its employee during the course and scope of his employment duties.

4. Direct negligence

Ms. Jackson's second claim that the trial court improperly granted the exception of no cause of action in favor of the Hilton Hotel is based on her contention that her petition is sufficient to state a cause of action in direct negligence, especially in light of the Hilton Hotel's heightened duty of care based on its status as an innkeeper. Ms. Jackson claims that the Hilton Hotel is directly liable for her damages based on the following claims:
1. The Hilton Hotel negligently hired, retained, or supervised Ferrand.

*698 2. The Hilton Hotel failed to warn her of hidden or concealed perils which were known or reasonably discoverable, specifically the hotel failed to warn her of the fact that Ferrand had a criminal record which included theft, felony theft of stolen merchandise, carrying a concealed weapon, and other crimes.
3. The Hilton Hotel failed in its duty to properly screen employees through routine police checks and polygraph tests.
4. The Hilton Hotel failed to provide adequate security.
5. The Hilton Hotel breached its duty not to take affirmative acts to increase the peril of its guests/visitors by giving Ferrand access to a master key.
Generally, a case against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee is governed by the same duty-risk analysis used for all negligence cases in Louisiana. Thus, the plaintiff is required to prove the following elements:
1. "the defendant had a duty to conform his conduct to a specific standard (the duty element)";
2. "the defendant failed to conform his conduct to the appropriate standard (the breach of duty element)";
3. "the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element)";
4. "the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element)"; and
5. "actual damages (the damages element)".
Roberts v. Benoit, 605 So.2d 1032 (La.1992) (on rehearing).

a. Duty

The first step in deciding whether Ms. Jackson's petition is sufficient to state a cause of action against the Hilton Hotel in direct negligence is determination of the duty owed by the Hilton Hotel to its guests/visitors under the circumstances of this case. Essentially two lines of cases exist which could be applicable to this issue. One line of cases deals with the duty of an employer to exercise care in hiring, retaining, and supervising employees; the other line of cases deals with the duty of an innkeeper to protect his guests/visitors. Those two lines of cases will be discussed separately.

1) Employers' duty of care in hiring, supervising, and training employees

The seminal case on the duty of an employer in hiring, retaining, and supervising employees is Smith v. Orkin Exterminating Co., Inc., 540 So.2d 363 (La.App. 1st Cir.1989), in which the court held that although generally "no duty to protect others from the criminal activity of third persons" exists, an employer who hires an employee "who in the performance of his duties will have a unique opportunity to commit a crime against a third party," has "a duty to exercise reasonable care in the selection of that employee" and that under some "unique circumstances" that employer has "a continuing duty to exercise reasonable care in the retention its employees." Id. at 366. In reaching this conclusion, the Smith court quoted the following excerpt from Prosser on Torts, § 33, pp. 201-03 (West 1994), in which Prosser explains some situations which might give rise to liability:
There are ... situations, in which either a special responsibility resting upon the defendant for the protection of the plaintiff, or an especial temptation and opportunity for criminal misconduct brought about by the defendant, will call upon him to take precautions against it. The responsibility for protection may arise out of a contract, by which the defendant has agreed to provide it; or it may be founded upon some relation existing between the parties, such as carrier and passenger, innkeeper and guest, invitor and business visitor, school and pupil, employer and employee, landlord and tenant, and no doubt others. The carrier, for example, may be required to protect its passengers from third persons who have threatened them with violence, or are drunk or quarrelsome, or to guard or warn them against external attack or look after its switches in a neighborhood *699 which is known to be frequented by criminal characters. Another possibility is that the defendant's special responsibility may arise because he is in a position to control the dangerous person, or is in some other unique position to prevent the harm, and so may be held to have an obligation to exercise reasonable care to do so.
There are other situations in which the defendant will be held liable because his affirmative conduct has greatly increased the risk or harm to the plaintiff through the criminal acts of others. The defendant may bring the plaintiff into contact with individuals of known criminal tendencies, as for example, by hiring them under conditions in which opportunity for crime is afforded.
Smith, 540 So.2d at 366-67 (original emphasis omitted; emphasis added). In Smith, the court held that the defendant exterminating company had a duty to exercise reasonable care in hiring and retaining employees because the unique nature of its business "requires that it send its employees directly into customer's homes." Id. at 367. See also Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir.1973), writs denied, 290 So.2d 899 and 901 (La. 1974), in which the court noted that many jurisdictions require "employers hiring people such as janitors, or for positions which allow employees into customers' or tenants' premises," to "use reasonable care in checking their criminal background before hiring them." Id. at 197. Thus, under Louisiana law, certain employers do have a duty to exercise reasonable care in hiring, retaining, and supervising employees.

2) Innkeeper's duty of protection

The seminal case on a Louisiana innkeeper's duty to protect his guests/visitors is Banks v. Hyatt Corp., 722 F.2d 214 (5th Cir.1984), in which the federal Fifth Circuit Court of Appeals, applying Louisiana law, held a hotel operator liable for the death of a guest who was shot by an armed robber four feet from the doors of the hotel underneath an overhang that was actually the second floor of the hotel complex. In reaching that decision, the court quoted the following statement made by the Louisiana Supreme Court in Kraaz v. La Quinta Motor Inns, Inc., 410 So.2d 1048 (La.1982):
An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. The innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. Thus, a guest is entitled to a high degree of care and protection. The innkeeper has a duty to take reasonable precautions against criminals.

Banks, 722 F.2d at at 220. The Banks case simply extended the rule announced in the Kraaz case to the areas reasonably adjacent to the hotel premises, rather than restricting the duty to the hotel itself.
Subsequent cases on this issue have reaffirmed the Banks rule that innkeepers have a duty to take reasonable precautions to protect their guests from the criminal activities of third parties both on the hotel premises and in areas reasonably adjacent thereto. Of special interest given the circumstances of the instant case is Zerangue v. Delta Towers, Ltd., 820 F.2d 130 (5th Cir. 1987), in which a hotel was held liable for damages suffered by a guest's visitor, who was subjected to a "protracted rape ordeal" when the hotel lobby door which she exited at 3 a.m. failed to allow her reentry. In that case, the court imposed upon the hotel "a duty to maintain the premises in a reasonably safe condition and to warn her of any hidden or concealed peril which was known or reasonably discoverable." Id. at 132. The hotel's liability in Zerangue was based at least partially on an inadequate security program. Id. at 133.
See also, e.g., Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La.App. 4th Cir.1984) (innkeeper liable for damages suffered by guest who was robbed in hotel parking lot because hotel failed to provide adequate security); Kraaz, 410 So.2d 1048 (innkeeper liable for damages suffered by guests who were robbed and assaulted inside their hotel room when the desk clerk gave the robber the master key).

3) Innkeeper's duty of care under circumstances of this case

No Louisiana cases have determined whether a hotel falls within the class of employers *700 which have a duty to exercise reasonable care in hiring, retaining, and supervising employees. Ms. Jackson claims that the duty to exercise reasonable care in hiring, retaining, and supervising employees should be extended to the Hilton Hotel because a hotel room is equivalent to a guest/visitor's home during the time the guest/visitor is staying at the hotel. That duty of reasonable care, Ms. Jackson says, should extend to require that hotels check the criminal backgrounds of prospective employees prior to hiring those employees. That argument is consistent to Prosser's statements quoted above. Thus, we hold that hotels in Louisiana do have a duty to exercise reasonable care in hiring, retaining, and supervising employees.
Further, as noted in the above cases involving innkeeper liability, a hotel has a duty to provide adequate security.

b. Breach of duty

The second step in deciding whether Ms. Jackson's petition is sufficient to state a cause of action against the Hilton Hotel in direct negligence is determination of whether the Hilton Hotel, under the facts as alleged by Ms. Jackson, breached either its duty to exercise reasonable care in hiring, retaining, and supervising employees or its duty to provide adequate security.

1) Breach of duty to exercise reasonable care in hiring, supervising, and training

Ms. Jackson's claim that the Hilton Hotel breached its duty to exercise reasonable care in hiring employees is based primarily on her contention that the Hilton Hotel failed to make a routine check of police records or to administer polygraph examinations to discover that Ferrand had a criminal record including theft, felony theft of stolen merchandise, carrying a concealed weapon, and other crimes. Much of her argument on this issue concerning polygraph examinations is based on Smith, 540 So.2d 363,[3] in which the court found that the defendant employer exterminating company had breached its duty to exercise reasonable care in hiring, retaining, and supervising employees because the company failed to properly administer its chosen method of protecting itself and its customersnamely, the administration of annual polygraph examinations. We note that nowhere in the Smith opinion does the court require that the company administer polygraph examinations to prospective and current employees; the decision is based on the company's failure to properly administer the polygraph examination which it chose as a method of fulfilling its duty of reasonable care in hiring and retaining employees.
However, because the defendant hotel in this case does have a duty to exercise reasonable care in hiring employees, some type of screening program is necessary for the purpose of determining whether an employee such as Ferrand, who had access to rooms and contact with hotel guests, has a criminal record. A polygraph examination might be appropriate, the employer might engage in a routine check of police records, or some other reasonable screening method might be employed. See, e.g., Mays, 339 So.2d 382; Samuels, 594 So.2d 571; Lou-Con, Inc., 287 So.2d 192.
For purposes of this appeal, we must accept as true Ms. Jackson's contention that the Hilton Hotel failed to discover Ferrand's criminal record prior to hiring Ferrand through some method of screening employees for prior criminal conduct. We must also accept as true that Ferrand has a criminal record including theft, felony theft of stolen merchandise, carrying a concealed weapon, and other crimes. Thus, the Hilton Hotel breached its duty to exercise reasonable care in hiring employees.
*701 Ms. Jackson also claims that the Hilton Hotel breached its duty to exercise reasonable care in supervising employees by allowing an employee with a criminal record to have access to a master key.[4] This claim is closely intertwined with the above claim because the Hilton's negligence in allowing a person with a criminal record access to the master key is obviously based on its negligence in failing to discover his criminal record. Presumably, if the Hilton Hotel had discovered Ferrand's criminal record, he would not have been hired; thus, he would not have been given access to the master key. However, for purposes of determining whether the trial court properly granted the exception of no cause of action, we will presume that the Hilton Hotel breached its duty to exercise reasonable care in supervising its employee Ferrand.

2) Breach of duty to provide adequate security

Although Ms. Jackson claims in her petition that the Hilton Hotel breached its duty to provide adequate security, her petition contains no facts which support that contention.[5] Thus, we find no violation of the Hilton Hotel's duty to provide adequate security.

c. Cause-in-fact

The third step in deciding whether Ms. Jackson's petition is sufficient to state a cause of action against the Hilton Hotel in direct negligence is determination of whether the Hilton Hotel's breach of its duty to exercise reasonable care in hiring and supervising its employees by failing to discover Ferrand's criminal record and/or by allowing Ferrand to have access to the master key was a cause-in-fact of the damages suffered by Ms. Jackson.
In the instant case, none of the actions of the hotel were a cause-in-fact of Ms. Jackson's harm. The only cause-in-fact of Ms. Jackson's harm was the actions of Ferrand and "possibly others" in committing the sexual assault on Ms. Jackson. Neither the Hilton Hotel's failure to discover Ferrand's previous criminal record nor its allowing Ferrand to have access to a master key was a cause-in-fact of Ms. Jackson's damages, especially in light of the fact that the sexual assault did not occur on the hotel's premises or during Ferrand's work hours. In fact, when Ms. Jackson voluntarily left the hotel premises with Ferrand, she effectively removed herself from the realm of the hotel's protection, making it impossible for the Hilton Hotel to protect her from the sexual assault. Thus, Ms. Jackson's petition is insufficient to state a cause of action in direct negligence against the Hilton Hotel.

d. Scope of liability/scope of protection (Legal causation)

The fourth, and final, step in deciding whether Ms. Jackson's petition is sufficient to state a cause of action against the Hilton Hotel in direct negligence is determination of whether the Hilton Hotel's breach of its duty to exercise reasonable care in hiring and supervising its employees by failing to discover Ferrand's criminal record and/or by allowing Ferrand to have access to the master key was a legal cause of the damages suffered by Ms. Jackson.
This prong of the negligence test, sometimes called the "duty-risk" analysis, has been explained as follows:

*702 The essence of the ... inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the [duty]. It is a hazard problem. Specifically, it involves a determination of whether the ... duty ... [was] designed, at least in part, to afford protection to the class of claimants of which plaintiff is a member from the hazard [encountered].
Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 488, 137 So.2d 298, 304 (1962). The finding of legal causation "requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character." Roberts, 605 So.2d at 1056, citing Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980).
Although foreseeability is a part of the analysis of legal causation, the Louisiana Supreme Court has noted that "[f]oreseeability is not always a reliable guide." Roberts, 605 So.2d at 1055, quoting Hill v. Lundin & Associates, Inc., 260 La. 542, 549, 256 So.2d 620, 622 (1972). In the Hill case, the supreme court adopted an ease of association test, "which asks how easily the risk of harm can be associated with the rule which was breached." Roberts, 605 So.2d at 1055.
In Lou-Con, 287 So.2d 192, the court held that an employer's presumed failure to discover its employee's previous conviction for acting in concert with others in stealing welfare checks was not a legal cause of the harm suffered by the plaintiffs when the employee, who provided janitorial services, committed arson and attempted to burn down the building where he worked in an effort to conceal his theft of money. The court found that discovery of the employee's previous conviction would not have made it "reasonably foreseeable that such a man would commit the terrible crime of arson." Id. at 199. In other words, the risk of hiring a employee with a criminal record for acting in concert with others to steal welfare checks does not encompass the risk that the employee will commit arson; no ease of association between the defendant employer's action and the plaintiff's damages exists under those circumstances. The court did not address whether the discovery of the previous conviction would have made the commission of the other crime, theft of money, reasonably foreseeable.
Likewise, in Mays, the court held that discovery of the fact that the employee had pled guilty to theft, was an alcoholic, and had personality problems, which could have been determined by a "cursory check" of the employee's background, would not reasonably have lead the employer to anticipate that the employee might commit rape. 339 So.2d 382. In other words, the risk of hiring a employee with a criminal record for theft, plus a record for alcohol abuse and personality problems, does not encompass the risk that the employee will commit a sexual assault; no ease of association between the defendant employer's action and the plaintiff's damages exists under those circumstances. Thus, the court refused to hold the employer directly liable for the plaintiff's injuries suffered in the rape.
In the instant case, Ms. Jackson claims that Ferrand had a criminal record including theft, felony theft of stolen merchandise, carrying a concealed weapon, and "other crimes." Despite the fact that Ms. Jackson included a "catch-all" category, knowledge that Ferrand had previously committed the crimes listed by Ms. Jackson would not have make it possible for the Hilton Hotel to anticipate that Ferrand would commit a sexual assault. In other words, the risk involved in hiring a hotel employee with a criminal history of theft, felony theft of stolen merchandise, and carrying a concealed weapon does not encompass the risk that the employee will commit a sexual assault. Further, the hotel's duty to exercise reasonable care in selecting, retaining, and supervising employees does not encompass the risk that a hotel guest would voluntarily leave the hotel premises on a personal date with a hotel employee after working hours and that the employee would sexually assault the guest while off the premises. Thus, no ease of association between the defendant employer's action and the plaintiff's damages exists under the circumstances of this case. Therefore, Ms. Jackson's petition is insufficient to state a cause of action against the Hilton Hotel for active negligence.

*703 5. Conclusion

Accordingly, we find that the trial court properly granted the Hilton Hotel's exception of no cause of action and properly dismissed Ms. Jackson's petition against the Hilton Hotel. We also agree with the trial court's conclusion that further amendments of Ms. Jackson's petition would be futile, and, thus, find no manifest error in that decision. Even when we consider the additional facts alleged by Ms. Jackson in her brief to this court, as well as the facts specifically alleged in her three petitions as true, and even when we resolve every doubt in favor of Ms. Jackson, she has failed to state any valid cause of action for relief. Thus, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] Ms. Jackson alleges additional facts and conclusion in her brief to this court. However, because an exception of no cause of action must be decided by considering only the sufficiency of the facts as pleaded in the plaintiff's petition, the additional facts included in the brief, but not included in any of the three petitions will not be discussed.
[2] Many of the allegations made by Ms. Jackson against the Hilton Hotel in this Second Supplemental and Amended Petition are conclusory, not purely factual. However, we set those allegations out in toto in order to allow a complete analysis of all of Ms. Jackson's claims against Hilton Hotel.
[3] Ms. Jackson's Second Supplemental and Amending Petition contains numerous conclusory statements which tracks the language of the Smith opinion, especially the portion of the Smith opinion quoting Prosser on Torts. Part of Ms. Jackson's argument to this court in brief is devoted to a discussion of how carefully she crafted her Second Supplementary and Amending Petition to track the Smith language in a concerted effort to avoid the granting of an exception of no cause of action. However, a court must consider only well-pleaded facts when determining whether a plaintiff has stated a cause of action; the fact that the plaintiff has made conclusions which are similar to conclusions reached in other cases is immaterial.
[4] In brief, Ms. Jackson also claims that the Hilton Hotel breached its duty to supervise employees because Ferrand, who was hired as a valet, was not authorized to have access to the master key and because Ferrand was allowed to breach hotel policy prohibiting employees from dating hotel guests. However, nowhere in her petitions does Ms. Ferrand allege that Ferrand was a valet who was not authorized to have assess to the master key, or that the hotel had a policy prohibiting employees from dating hotel guests. We note, however, that the result in this case would not be affected by the inclusion of those facts in Ms. Jackson's petitions.
[5] In brief, Ms. Jackson claims that the Hilton Hotel breached its duty to provide adequate security when Ferrand was "allowed" to both pick her up and drop her off in clear view of other hotel employees, based on her contention that the hotel had a policy prohibiting employees from dating hotel guests. However, as previously noted, nowhere in Ms. Jackson's petitions does she allege that the hotel has such a policy. We note, however, that Ms. Jackson's alleging such a fact would not affect the result in this case.